IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 37638

JIMMY RAY SCHNEIDER,　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　Plaintiff-Respondent,　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)　　　Boise, May 2011 Term
　　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)　　　2011 Opinion No. 91
　　　　　　　　　　　　　　　　　　　　)
DOROTHY MICHELL SCHNEIDER,　　　　)
　　　　　　　　　　　　　　　　　　　　)　　　Filed:　August 8, 2011
　　　Defendant-Appellant.　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)　　　Stephen W. Kenyon, Clerk
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　).

Appeal from the District Court of the Third Judicial District, State of Idaho, Gem County.  Hon. Tyler D. Smith, Magistrate Judge.

Magistrate judge award of primary physical custody, <u>affirmed.</u>  Case <u>remanded</u> for determination of reasonable visitation schedule.

Ludwig, Shoufler, Miller, Johnson, LLP, Boise, for appellant.  Michael R. Johnson argued.

Ann K. Shepard, Boise, argued for respondent.

---

.

BURDICK, Chief Justice

After conducting an informal custody trial and granting the parties' divorce, the magistrate judge awarded the parties joint legal custody of their two minor children and awarded primary physical custody to their father, Respondent Jimmy Schneider (Jimmy), subject to visitation rights awarded to their mother, Appellant Dorothy Michell Schneider (Michell). Michell appeals, arguing that: (1) the magistrate judge improperly rejected the testimony of Michell's primary treating physician concerning Michell's ability to provide proper parental care despite suffering from multiple medical conditions and taking numerous prescription medications; (2) the magistrate judge abused its discretion by granting primary custody of the children to Jimmy and ordering that Michell be allowed to provide care on school days while Jimmy is at work both in the morning before school at Jimmy's residence and after school at her home, instead of simply allowing the children to reside with her during the school week; (3) the

magistrate judge failed to consider I.C. § 32-717(2), which gives a parent with a disability the right to provide evidence, which the court must take into account, concerning the manner in which adaptive equipment and supportive services will enable the parent to provide proper parental care; and (4) the magistrate judge erred by not making a record of its in-camera interview of the children.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Jimmy and Michell married on June 28, 1993, in Emmett, Idaho. They have two children born of their marriage, Daughter and Son. On March 12, 2009, Jimmy filed the Complaint for Divorce, alleging irreconcilable differences. Jimmy requested an equitable division of the parties' community property and debt and requested joint legal custody of the children with primary physical custody with Jimmy, subject to reasonable visitation with Michell. Thereafter, Michell filed her Verified Answer and Counterclaim, and Jimmy filed his Answer to Counterclaim.

On June 22, 2009, based upon the stipulation of the parties, the magistrate judge entered an Order for Mediation, ordering the parties to attend at least three mediation sessions. Eventually, a trial was scheduled for October 19, 2009. On October 15, 2009, each party filed a Consent to Informal Custody Trial pursuant to I.R.C.P. 16(p) and a Waiver of the Rules of Evidence for Informal Custody Trial. An informal custody trial commenced on October 19, 2009, and the parties placed their stipulation regarding property and debt issues on the record and submitted a Property and Debt Schedule. Jimmy and Michell testified regarding the best interests of the children.

At the end of the first day of trial, the magistrate judge scheduled a continuation of the trial for November 24, 2009, for further discussion of custody of the children, specifically concerning the details of Michell's use of prescription medications. The magistrate judge temporarily ordered a 50/50 custody schedule with the condition that Michell not drive the children until the magistrate judge received a release from a doctor with knowledge of the medications she takes. On November 5, 2009, the magistrate judge entered a Temporary Order, ordering the parties to alternate weekly custody of the children beginning on the day Michell moved out of the marital home.

The second and final day of trial was held on November 24, 2009. Tina McGuffey, Michell's primary care physician, testified regarding Michell's medical conditions and

prescribed medications. Thereafter, the magistrate judge took the matter under advisement. After trial, the parties stipulated to an Order for In-Camera Interview, which was entered pursuant to I.R.E. 611, and provided that the magistrate judge would interview Daughter on December 15, 2009.

On December 16, 2009, the magistrate judge issued its Memorandum Decision and Order. The magistrate judge found that irreconcilable differences existed and granted the divorce. On March 18, 2010, the magistrate judge issued a Judgment and Decree of Divorce, incorporating the Memorandum Decision and Order and the parties' stipulation for the division of community property and debt from October 19, 2009. The magistrate judge ordered the parties to share joint legal custody, finding "based upon the evidence presented at trial . . . both parties should have input managing the day to day lives of their children." Jimmy was awarded primary physical custody. Michell was granted the following visitation rights: (1) to care for the children in the morning at Jimmy's house on days when Jimmy leaves for work around 4:30 am to get them ready for school, subject to certain conditions that she respect Jimmy's privacy while in his home; (2) visitation after school at her residence until Jimmy returns from work around 5:00 pm; (3) visitation the first and third weekend of each month during the school year; and (4) 60 consecutive days of summer visitation, subject to Jimmy's visitation on the first, third and fifth weekends of the month.

When it addressed primary custody in its Memorandum Decision and Order, the magistrate judge first explained:

> Many of the factors set forth [in I.C. § 32-717(1)] are a wash. The Court has considered the wishes of the parents, the interaction and interrelationship of the children with each other and their parents, and there appears to be no sustainable allegations of domestic violence, the Court finds none of these factors to weigh more heavily toward one parent or the other. Thus, in making its determination the Court will focus on the need to promote continuity and stability in the life of the children, the character and circumstances of all individuals involved and their adjustment to their home, school and community.

As to the character and the circumstances of the individuals, the magistrate judge concluded that this factor weighed in favor of Jimmy. The magistrate judge found: "[Jimmy] is employed and in reasonably good health. The Court has serious concerns about [Michell's] current and future abilities to meet the needs of her children." The magistrate judge set forth its concerns about Michell as follows:

3

Ms. Schneider suffers from several long term chronic illnesses and takes a number of medications on a regular basis . . . .

In reviewing the exhibits submitted many of these medications increase sedation. During the trial, [Jimmy] described times when [Michell] would simply and suddenly fall asleep. This appears to be consistent with the medications taken. In an attempt to address this issue, Ms. Schneider was prescribed Nuvigil, however, coverage was denied. The number and types of medications caused the Court grave concern. The Court asked for an independent review of the medications taken. [Michell] had her primary care physician testify. Her doctor testified that [Michell] tolerated the medication well. [Michell's] doctor further testified that [Michell] was fine to drive short distances and that she believed the medications did not interfere with [Michell's] ability to parent.

The evidence presented in Court leads the Court to find that [Michell] functions better then [sic] can be expected based upon her overall health and use of multiple medications. An independent assessment of [Michell's] medication regimen was provided by her primary physician's partner. During questioning [Michell's] doctor would not concede, at all, that the medication regimen interferes with [Michell's] ability to parent. That testimony was not consistent with the other evidence at trial.

The magistrate judge raised two main concerns in the Memorandum Decision and Order which it believed were inconsistent with Dr. McGuffey's testimony concerning the effect of Michell's medication regime and her ability to parent. First, the magistrate judge noted Michell's potentially dangerous behavior of leaving narcotics in a disheveled room at home, as shown by pictures admitted into evidence, as well as her odd behavior in, according to her testimony, creating this potentially dangerous situation for the purpose of discouraging Jimmy from going through her things. Second, the magistrate judge noted Michell's potential inability to react to emergency situations due to evidence that she takes narcotics that cause sedation, testimony that she may fall asleep without notice during normal activities, and the fact that the Dr. McGuffey, while testifying that Michell does not have a problem with suddenly falling asleep, is trying to treat Michell with the stimulant Nuvigil.

As to the factor of continuity and stability, the magistrate judge stated in the Memorandum Decision and Order that Jimmy "is in the best position to promote continuity and stability" without further explanation. The magistrate judge added: "That being said, the Court also finds that [Michell] should have frequent and constant involvement in the lives of the children. [Michell], because of her chronic illness does not work and is therefore always available to care for the children when [Jimmy] is at work."

4

Finally, in the Memorandum Decision and Order, the magistrate judge noted that in the in-camera interview the children expressed opposite preferences as to the parent with which they wished to live. The magistrate judge stated that it could not find that splitting up the children was in their best interests, as the children rely on each other.

On March 31, 2010, Michell filed a Motion for Permissive Direct Appeal with the magistrate. After a hearing on the motion, the magistrate judge granted the motion. On April 29, 2010, Michell filed a Motion for Permissive Direct Appeal with this Court, which was granted on June 10, 2010. On June 14, 2010, this Court entered an Amended Order Granting Motion for Permissive Direct Appeal. On June 21, 2010, Michell filed a Notice of Appeal in the district court in the county in which the magistrate judge's child custody order was entered. On July 12, 2010, Michell filed an Amended Notice of Appeal.

## II. ISSUES ON APPEAL

1. Whether by agreeing to proceed by informal custody trial, Michell is precluded from raising any of these issues on appeal.

2. Whether the magistrate judge abused its discretion when it granted Jimmy primary physical custody.

3. Whether the magistrate judge abused its discretion by granting Michell the right to care for the children at Jimmy's home on certain school-day mornings while Jimmy is at work.

4. Whether the magistrate judge erred by not considering I.C. § 37-717(2) as it relates to Michell's disabilities.

5. Whether the magistrate judge erred by not making a record of the in-camera interview of the children.

6. Whether Jimmy is entitled to an award of attorney fees.

## III. STANDARD OF REVIEW

Custody determinations are committed to the sound discretion of the trial court. *Hoskinson v. Hoskinson*, 139 Idaho 448, 454, 80 P.3d 1049, 1055 (2003).

> This Court reviews a custody decision by asking whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) reached its decision by an exercise of reason.

*Id.* The trial court abuses its discretion when its findings are clearly erroneous such that the court's findings are not based on substantial and competent evidence. *Nelson v. Nelson*, 144 Idaho 710, 713, 170 P.3d 375, 378 (2007). An appellate court will view the evidence in favor of

the trial court's judgment and will uphold the trial court's findings of fact even if there is conflicting evidence. *Danti v. Danti*, 146 Idaho 929, 934, 204 P.3d 1140, 1145 (2009). "We will not make credibility determinations or replace the trial court's factual findings by reweighing the evidence." *Id.*

We exercise free review over questions of law. *Fazzio v. Mason*, 150 Idaho 591, ___, 249 P.3d 390, 393 (2011).

## IV. ANALYSIS

On appeal, Michell challenges the magistrate's finding that her medication use affects her ability to parent and the magistrate's decision to award primary physical custody to Jimmy. She also contends that the magistrate judge exceeded his authority by ordering that Michell be allowed to care for the children in Jimmy's home on certain mornings. Finally, she argues that the magistrate judge erred in failing to inform her of her rights as a "disabled" person pursuant to I.C. § 32-717(2) and in failing to make a record of his in-camera interview with the children.

### A. Michell did not waive any of the issues she raises on appeal by agreeing to proceed by informal custody trial.

Before addressing the issues Michell raises on appeal, we first clarify that she did not waive any of these issues by agreeing to proceed by informal custody trial. In his Response Brief, Jimmy argues that by executing a Waiver of the Rules of Evidence for Informal Custody Trial, Michell cannot now argue: (1) that the magistrate judge overemphasized any particular evidence (which she argues with respect to the evidence related to her use of medication) and (2) that the magistrate judge did not properly consider specific evidence (which she argues with respect to the use of adaptive equipment and supportive services as a disabled person under I.C. § 32-717(2)).

Idaho Rule of Civil Procedure 16(p) [1] permits parties to proceed by informal custody trial as an alternative trial procedure, pursuant to which "the application of the Idaho Rules of

---

[1] Idaho Rule of Civil Procedure 16(p), Informal Custody Trial, provides in full:
(1) An Informal Custody Trial is an optional alternative trial procedure that is voluntarily agreed to by the parties, counsel and the court to try child custody and child support issues. The model requires that the application of the Idaho Rules of Evidence and the normal question and answer manner of trial be waived. Once the waiver is obtained the matter proceeds to trial by consent as follows:

> a. The moving party is allowed to speak to the court under oath as to his or her desires as to child custody and child support determination. The party is not questioned by counsel, but may be questioned by the court to develop evidence required by the Idaho Child Support Guidelines and child custody evidence required by Idaho Code § 32-717.

Evidence and the normal question and answer manner of trial [are] waived." I.R.C.P. 16(p). Jimmy and Michell each signed a Waiver of the Rules of Evidence and each signed a Consent to Informal Custody Trial, which set forth the informal process by which the trial would proceed.

Jimmy relies on the following provision of the Waiver of the Rules of Evidence:

> My rights on appeal are extremely limited. I understand that, if I appeal, the Court will be reviewing a transcript of the hearing and I will not be able to challenge any of the documents or testimony that was considered during the informal custody trial process. The only issue on appeal will be whether the Court abused its discretion in reaching its findings and conclusions and it is unlikely an appeal will result in a different outcome.

While this provision states that Michell's "rights on appeal are extremely limited", they are not as limited as Jimmy argues they are.

This provision explicitly provides that the parties may appeal the issue of whether the court abused its discretion in making its findings and reaching its conclusions. While Michell waived certain formalities concerning what evidence may be introduced and relied upon by the magistrate judge and how that evidence may be introduced, she did not waive the right to challenge the sufficiency of such evidence to support the magistrate judge's findings and did not waive the right to challenge the magistrate judge's weighing of the factors set forth in I.C. § 32-717(1) based on the evidence presented to make a custody determination. Thus, Michell did not waive her rights to challenge whether the magistrate judge's findings are supported by substantial and competent evidence and whether the magistrate judge abused his discretion reaching the decision to award primary custody to Jimmy. Whether the magistrate judge overemphasized Michell's medication goes precisely to whether the magistrate judge abused his discretion in awarding Jimmy primary custody under the standards set forth in I.C. § 32-717(1).

---

b. The court then asks counsel for that party, if any, if there are any other areas the attorney wants the court to inquire about. If there are any, the court does so.

c. The process is then repeated for the other party.

d. If there is a Guardian ad Litem or other expert, the expert's report is entered into evidence as the court's exhibit. If either party desires, the expert is sworn and subjected to questioning by counsel, parties or the court.

e. The parties may present any documents they want the court to consider. The court shall determine what weight, if any, to give each document. The court may order the record to be supplemented.

f. The parties are then offered the opportunity to respond briefly to the comments of the other party.

g. Counsel or self-represented parties are offered the opportunity to make legal argument.

h. At the conclusion of the case, the court will make a decision.

(2) Consent and waiver. The consent to and waiver to the Informal Custody Trial shall be given verbally on the record under oath or in writing on a form adopted by the Supreme Court.

Additionally, Michell has not waived the applicability of I.C. § 32-717(2), which requires courts to inform "disabled" persons that they have the right to submit evidence of adaptive equipment and supportive services and requires the court to consider such evidence in reaching its decision. By waiving the rules of evidence and agreeing to proceed by informal custody trial, Michell did not waive the applicability of any statutory rights she may have, such as her rights under I.C. § 32-717(2). Furthermore, the first paragraph of the Consent to Informal Custody Trial which Michell and Jimmy signed provides: "The person bringing the action before the court presents their case first, under oath. The person is not questioned by lawyers, but may be questioned by the court to develop evidence required by the Idaho Child Support Guidelines and *child custody evidence required by Idaho Code § 32-717*." (Emphasis added).

The final issue Michell raises—that the magistrate judge erred by not making a record of his in-camera interview with the children—is based on our decision in *Strain v. Strain*, 95 Idaho 904, 523 P.2d 36 (1974). In *Strain*, we held that an in-camera interview must be recorded if the interview is necessary to support the trial court's custody decision. *Id.* at 906, 523 P.2d at 38. We set forth this rule out of our concern that an appellate court cannot effectively review a trial court's decision where evidence necessary to the decision is not part of the record. *See id.* As already mentioned, while the informal custody trial was created to simplify the process by which trials take place and to simplify the introduction of evidence, the informal custody trial does not change the requirement that the magistrate judge's findings and conclusions must be supported by substantial and competent evidence in the record. Therefore, Michell did not waive her ability to raise this issue on appeal.

## B. The magistrate judge did not abuse his discretion when he granted Jimmy primary custody.

In its Memorandum Decision and Order, the magistrate judge found that the testimony of Dr. McGuffey (Michell's primary physician), which stated that Michell's medication use did not interfere with her parenting, was "not consistent with the other evidence presented at trial," and the magistrate judge set forth that it had "serious concerns about [Michell's] current and future abilities to meet the needs of her children." Michell argues that this conclusion is not supported by substantial and competent evidence. According to Michell, the only evidence presented at trial which the magistrate judge cited on this issue was: (1) the condition of the home presented in photographs taken after the filing of the divorce and (2) Jimmy's testimony that Michell occasionally fell asleep during normal activities. Michell argues that this evidence is not enough

to rebut Dr. McGuffey's testimony. Additionally, Michell suggests that certain comments made by the magistrate judge relating to his experience as a drug court judge reflect a potential bias. Michell argues that the magistrate judge overemphasized her medication use in making its decision and abused his discretion in awarding Jimmy primary physical custody.

1. The magistrate judge's findings are supported by substantial and competent evidence.

Michell cites *In re Doe*, 142 Idaho 594, 130 P.3d 1132 (2006), for the rule that a trial court may not arbitrarily or capriciously disregard the positive or uncontradicted testimony of a credible witness, and the trial court must accept such testimony as true unless the testimony was impeached, inherently improbable or rendered improbable by facts and circumstances disclosed at trial. Dr. McGuffey testified at trial that, while there is always a concern of negative side effects when taking medication, Michell has been on most of her medications for over two years and has been "stabilized on them and doing quite well." Dr. McGuffey testified that she believes, from her personal observation, that Michell is a competent mother who is able to drive and work with the children.

In the Memorandum Decision and Order, the magistrate judge acknowledged Dr. McGuffey's testimony but found the conflicting evidence to be more compelling. On cross-examination, Dr. McGuffey acknowledged that her observations of Michell were limited to seeing Michell in her waiting room and office. On the first day of trial, upon deciding to continue the trial to a second day in order for Michell to provide more information concerning her medication use, the magistrate judge advised Michell and her attorney that it would be in Michell's interest to find an independent doctor to assess Michell and testify. The magistrate judge explained:

> I think it would be in your best interest to go to an independent doctor who's never dealt with you before and take your sheet of all the stuff that you're taking in to them and have them sit down and go through it with you because it may very well be that they'll have a different perspective.
> I worry about if you have Dr. McGuffey do it, I'm worried that she'll feel defensive about it because there's an inquiry whereas if you get a neutral person, you may find that there's some things that they can do differently. I'm going to leave that up to you, Mr. Leroy [as Michell's attorney]. Certainly I'll give weight to it differently depending on who's telling me the information.

Nevertheless, Michell called Dr. McGuffey, her primary physician who writes some of her prescriptions, to testify. Michell also submitted a letter from one of Dr. McGuffey's partners at Black Canyon Family Medicine which states that Michell's medical therapy is necessary and

appropriate and that her prescribed medications are not excessive and "should in no way make her unable to care for children."

Jimmy submitted the letter of Dr. A. Patricia Burgess. Dr. Burgess did not see Michell or review her medical records, but she reviewed the list of medications that Michell takes and offered the following observations: (1) the amount of medications meets the criteria for polypharmacy, which results in increased risk of drug interactions and side effects; (2) many medications on the list are sedating or mood-altering, and she would have concerns about Michell operating heavy machinery and being the only adult in the household due to a risk of memory impairment and lack of awareness of emergency signals; and (3) several of the medications interact with each other, which could cause further impairment.

Additionally, Jimmy testified that Michell "blows up over little things" and a lot times at night "she basically passes out," both of which he attributes to her medication use. Jimmy also testified that a doctor who assessed Michell's stomach problems told them that she had "polypharmacy which basically is too much medication" which does not "cooperate with each other" and "causes her to get nauseous." Jimmy testified as well to Michell's bad judgment, specifically discussing instances where she "trimmed the interest off of" the children's savings accounts, stating he "can only relate this back to the medication and the bad judgment it causes." Jimmy submitted photos from a portion of their home which was in Michell's control, which shows many bottles of what he testified to be Michell's medications and which appear to be lying out amongst piles of disorganized clutter.

"When we review the record to determine whether substantial evidence exists we are precluded from substituting our judgment for that of the fact finder as to the credibility of witnesses, the weight of testimony and the reasonable inferences to be drawn from the evidence." *State v. Bettwieser*, 143 Idaho 582, 588, 149 P.3d 857, 863 (Ct. App. 2006). "[T]his Court will not reweigh conflicting evidence or attempt to judge the credibility of witnesses on appeal". *In re Doe*, 147 Idaho 243, 254, 207 P.3d 974, 985 (2009). In light of the foregoing evidence from the record, we hold that there is substantial evidence to support the magistrate judge's finding that Michell's use of medications may impair her ability to provide proper parental care.

2. The magistrate judge acted within his discretion when he awarded Jimmy primary physical custody.

While Jimmy was awarded primary custody of the children, Michell was granted significant visitation rights. She was awarded visitation on the first and third weekend of each

10

month during the school year and 60 consecutive days of summer visitation, subject to Jimmy's visitation on the first, third and fifth weekends of the month during summer. Throughout the year, on the days Jimmy works (Monday through Thursday and occasionally on Friday), Michell was granted: (1) the option to care for the children in the morning at Jimmy's house beginning around 4:30 am when Jimmy leaves for work to get them ready for school, subject to certain conditions that she respect Jimmy's privacy while in his home; and (2) visitation after school at her residence until Jimmy returns from work around 5:00 pm.

Michell argues that the magistrate judge abused its discretion in granting Jimmy primary custody and setting this visitation schedule. According to Michell, the rational decision would have been to award her primary custody during the week, because: (1) Jimmy's work schedule interferes with his ability to care for the children in the mornings on school days; (2) the magistrate judge found Michell capable of caring for the children in the mornings; and (3) there was no evidence that Michell had difficulty caring for the children at night while they slept. Michell also argues that awarding primary custody to her during the week provides a more predictable, stable home environment. According to Michell, the magistrate judge overemphasized her use of medication, and the magistrate judge essentially made her Jimmy's unpaid nanny.

Idaho Code § 32-717(1), which governs custody determinations in actions for divorce, provides:

> (1) In an action for divorce the court may, before and after judgment, give such direction for the custody, care and education of the children of the marriage as may seem necessary or proper in the best interests of the children. The court shall consider all relevant factors which may include:
> (a) The wishes of the child's parent or parents as to his or her custody;
> (b) The wishes of the child as to his or her custodian;
> (c) The interaction and interrelationship of the child with his or her parent or parents, and his or her siblings;
> (d) The child's adjustment to his or her home, school, and community;
> (e) The character and circumstances of all individuals involved;
> (f) The need to promote continuity and stability in the life of the child; and
> (g) Domestic violence as defined in section 39-6303, Idaho Code, whether or not in the presence of the child.

In *Hoskinson*, this Court explained:

> In conjunction with Idaho Code § 32-717, a child's welfare and best interests are of paramount importance. Idaho Code § 32-717 gives a judge wide discretion regarding custody decisions, subject to some restrictions. However, the

trial court must avoid considering irrelevant factors. The trial court must also avoid assigning too much weight to any particular factor and base its findings of fact upon substantial and competent evidence.

139 Idaho at 455, 80 P.3d at 1056 (citations omitted) (quotations omitted).

In its Memorandum Decision and Order, the magistrate judge addressed the factors set forth in I.C. § 37-717(1), finding most of the factors were neutral, but that upon considering the character and the circumstances of the individuals as well as the ability to provide stability and continuity, Jimmy should be awarded primary custody. The magistrate judge provided no explanation of its finding that Jimmy provides more stability and continuity, but as to the character and circumstances of the individuals, the magistrate judge expressed concern with Michell's ability to parent due to her use of medications. Thus, the magistrate judge's decision appears to rely primarily on concerns with Michell's ability to parent in light of her medication use.

We hold that the magistrate judge did not abuse his discretion by relying on this evidence and awarding Jimmy primary custody. Where every other factor in I.C. § 32-717(1) is neutral, there is nothing improper in basing the custody decision on only one factor if that factor is found to weigh in favor of one parent over the other. We recognize that the evidence put forth concerning Michell's medication use does not show that she is wholly incapable of providing proper parental care. Rather, this evidence merely shows that there is reason to be concerned that some problems could arise with Michell's parenting. However, as explained in the previous section of this opinion, the magistrate judge's concern with Michell's ability to parent in light of her medication use was supported by substantial evidence. Michell has not alerted this Court to any evidence which calls into question Jimmy's ability to parent. On appeal, Michell asserts that the children would have more stability and continuity if she were awarded primary physical custody, apparently because Jimmy has a job, but we do not find this sufficient to show that the magistrate judge abused his discretion. Therefore, we uphold the award of primary physical custody to Jimmy.

3. Michell has not shown that the magistrate judge was biased.

Michell argues that the magistrate judge may have been biased and cites *In re Doe* for the following proposition: "In family law cases, there is a requirement of explicit findings [which] encourages a trial judge to rely upon objectively supportable grounds for his decision, and discourages subjective attitude-influenced perceptions of the case." 142 Idaho at 599, 130 P.3d

12

at 1137. According to Michell, the magistrate judge's comments regarding his experience as a drug court judge show a potential bias. Michell, however, mischaracterizes expertise as bias.

Near the end of the first day of trial, the magistrate judge explained that based on what had been presented up to that point, he was concerned with Michell's use of prescription medications and that he wanted more information, explaining:

> I'm struggling whether or not to conclude this proceeding today because based on the information that I have, I think I probably need more information from [Michell's] doctors.
> If I make the decision today . . . for the best interest of the children, my finding would be that you're taking a toxic, probably ultimately lethal cocktail of prescription medications and I think it is in the best interest of the children that I make sure that one doctor knows everything you're taking and how much you're taking and that it's appropriate for you to take all the things that you're taking at one time so that their mom's around long enough.
> As I sit here—and you have to understand, I come from the perspective of a drug court judge so I have a lot of training and background in a lot of different types of medications and right now, if I make the decision today, at least temporarily, I'm going to give [Jimmy] custody with you certainly being able to get the kids after school till he gets home and certainly that type of stuff until I'm convinced that I have one doctor who's responsible for all your medications and one doctor who can get me information that they're monitoring and they think that it's okay for you to drive, that they think it's okay for you to take those meds because I just—I simply sit there just based on your own testimony of what you have available to take, I'm just stunned that I have one—any doctor that's approving them all at once.

Michell makes no specific argument as to how the magistrate judge's comment about his perspective as a drug court judge demonstrates any bias he has against her. After making this comment, the magistrate judge granted equal custody until the second day of trial could be held. Throughout both days of trial, the magistrate judge expressed much empathy and understanding toward Michell and made many kind comments about her as a parent. Furthermore, despite the concerns the magistrate judge expressed regarding Michell's use of medications, and despite technically awarding primary physical custody to Jimmy, the magistrate judge granted joint legal custody and granted Michell visitation rights which give her the option to spend nearly the same amount of time with the children as Jimmy was granted.

We hold that the magistrate judge's decision to award Jimmy primary physical custody is based on objectively supportable grounds. Michell has not demonstrated that the magistrate judge was biased.

**C. The magistrate judge erred in granting Michell the right to care for the children in Jimmy's home on certain school-day mornings.**

As already set forth, the visitation schedule gave Michell the right to care for the children at Jimmy's home early in the morning in order to get the children prepared for school on those days Jimmy has to work (Monday through Thursday and sometimes on Friday). Michell argues that the magistrate judge exceeded his authority in awarding this visitation right and argues that this award shows that she is a capable parent. Jimmy agrees with Michell that allowing her to care for the children at his home on workday mornings is an unusual decision and states that he has not found any authority supporting the court's ability to require a custodial parent to allow access to their separate property residence, post-divorce, so that the non-primary custodial parent can spend time with the children before school. Furthermore, Jimmy testified that he has four family members (his mother, stepfather, sister and niece) who are willing and able to care for the children on the mornings that he works.[2]

The magistrate judge awarded Michell the right to come to Jimmy's separate property without his permission. This arrangement is novel and has not been specifically addressed by this Court, but there is an analogy to be found in this Court's decisions concerning the award of separate property in divorce proceedings. Idaho Code §§ 32-712 to -714 govern the distribution of property upon divorce. In *Heslip v. Heslip*, 74 Idaho 368, 372, 262 P.2d 999, 1002 (1953), we explained that the "court has the power under [I.C. § 32-712] to divide the community property between the parties, but has no power or authority to award the wife's separate property, or any part of it, to the husband." And in *Radermacher v. Radermacher*, 61 Idaho 261, 273–74, 100 P.2d 955, 961 (1940), we stated that a judge "is without power to award the separate property of the husband to the wife, either permanently or temporarily." While we have acknowledged that a judge may impose a lien against separate property, *Gapsch v. Gapsch*, 76 Idaho 44, 277 P.2d 278 (1954), and that a judge may order a sale of community property containing a separate "equity," *Nichols v. Nichols*, 84 Idaho 379, 382, 372 P.2d 758, 760 (1962), we continue to abide by this principle that the Idaho Code grants the courts the power to divide community property but does not authorize the courts to award one spouse's separate property to the other spouse.

[2] Jimmy also states in his brief that he is willing to accept this arrangement for the time being, despite believing that it is strange. He argues the district court erred in not placing a time limit on this arrangement. Jimmy argues that when the children reach the ages of 14 and 11, it will no longer be necessary for Michell to enter Jimmy's home to get the children off to school and that at that time he would like to restore normal boundaries and expectations of privacy. Son turned 11 in March of 2011, and Daughter turned 14 in April of 2011.

*See Simplot v. Simplot*, 96 Idaho 239, 526 P.2d 844 (1974) (declining to make equitable award of separate property).  *See also Pringle v. Pringle*, 109 Idaho 1026, 1028–29, 712 P.2d 727, 729–30 (Ct. App. 1985) (holding that a court may not compel one spouse to sell his or her separate property to the other spouse as part of a divorce decree).

By awarding Michell the right to care for the children on certain mornings at Jimmy's home, the magistrate judge in effect awarded her the right to enter and use Jimmy's separate property.  We hold that this arrangement offends the policy set forth in cases like *Heslip*, *Gapsch*, and *Simplot* that a court has no power or authority to award all or any part of one spouse's property to the other spouse as part of the divorce decree.  Therefore, the case is remanded for the limited purposes of: (1) eliminating the provision of the visitation schedule which grants Michell the right to care for the children in Jimmy's home on certain mornings and (2) adjusting the visitation schedule, if necessary, in light of the effect this change has on the magistrate's time computation for visitation.

**D. Any technical violation of I.C. § 37-717(2) was harmless.**

Michell argues that the magistrate judge failed to advise her, pursuant to I.C. § 37-717(2)[3], of her right as someone with a disability to provide evidence and information regarding the use of adaptive equipment and supportive services.  She also asserts that the magistrate judge failed to make findings regarding the effect of her disability on her ability to parent and regarding whether adaptive equipment or supporting services can compensate for such effects.  Jimmy argues that Michell's excessive use of prescription medication is a substance use disorder which is specifically excluded from the definition of "disability" in I.C. § 32-717(4)(b)[4] and that

---

[3] Idaho Code § 32-717(2) provides in relevant part:

> If the parent has a disability as defined in this section, the parent shall have the right to provide evidence and information regarding the manner in which the use of adaptive equipment or supportive services will enable the parent to carry out the responsibilities of parenting the child. The court shall advise the parent of such right.  Evaluations of parental fitness shall take into account the use of adaptive equipment and supportive services for parents with disabilities and shall be conducted by, or with the assistance of, a person who has expertise concerning such equipment and services.

[4] Idaho Code § 32-717(4)(b) provides in relevant part:

> "Disability" means, with respect to an individual, any mental or physical impairment which substantially limits one (1) or more major life activities of the individual including, but not limited to, self-care, manual tasks, walking, seeing, hearing, speaking, learning or working, or a record of such an impairment, or being regarded as having such an impairment. *Disability shall not include* transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, other sexual behavior disorders, *substance use disorders*, compulsive gambling, kleptomania or pyromania.

her substance use disorder is the only illness or impairment, of the many that were brought up, which the magistrate judge considered in making its decision. On reply, Michell argues that she suffers from multiple disabilities but that she does not suffer a substance use disorder since she takes her medications as prescribed.

Nothing in the record suggests that the magistrate judge's decision depended upon the various ailments themselves from which Michell suffers nor upon any direct effect they may have on her ability to parent, and Jimmy never made such an argument. However, as already explained, the magistrate judge's decision did depend on Michell's use of medications to treat her various ailments. Uncontroverted evidence showed that Michell took her medications only in their prescribed manner. We believe it would be artificial to distinguish the effects that treating a disability has on a parent's ability to care for her children from the effects that the disability itself has on the her ability to care for them. Therefore, assuming that Michell suffers a "disability", the magistrate judge should have notified her pursuant to I.C. § 32-717(2) of her right to put forth evidence of adaptive equipment and supportive services. But any such error was harmless in this case.

Pursuant to I.R.C.P. 61, entitled "Harmless error", courts are instructed to disregard error that does not affect the substantial rights of a party. *See Taylor v. McNichols*, 149 Idaho 826, 836, 243 P.3d 642, 652 (2010) ("In spite of the district court's error, this error is harmless under I.R.C.P. 61."). Michell's use of medication to treat her ailments and any effect such treatment may have on her parenting was the main issue discussed by both parties on both days of trial. The magistrate judge extended the trial from one to two days to give Michell the opportunity to provide more information on her use of medications. Thus, even though the magistrate judge did not explicitly notify Michell of her rights under I.C. § 32-717(2), the record shows she was on notice that the effects of any disabilities she suffers from were at issue, and she was provided the opportunity to present evidence on this issue. Furthermore, on appeal Michell has not pointed to any evidence concerning adaptive equipment and/or supportive services which she might have put forward that could have changed the result. Thus, we hold that any technical violation of I.C. § 32-717(2) was harmless in this case.

**E. The magistrate judge did not err by failing to make a record of the in-camera interview.**

Sexual preference or orientation is not considered an impairment or disability. Whether an impairment substantially limits a major life activity shall be determined without consideration of the effect of corrective or mitigating measures used to reduce the effects of the impairment.

In the Memorandum Decision and Order, the magistrate judge provides the following discussion of the in-camera interviews:

> [A]fter the trial concluded the parties agreed to allow the Court to interview the children in camera. The Court spoke with the children on December 15, 2009, and explained to both children that the ultimate decision where they lived was up to the Court. The Court further explained that if the Court ordered the visitation that the children were expected to follow that order. In other words, the children were not allowed to decide when, where and how visitation would occur.
>
> During the course of the interview both children expressed a preference as to where they wanted to live. [Daughter] wants to reside with her father. [Son] expressed a desire to live with his mother. However, the court cannot find that [sic] is in the best interest of the children to split them up. The Court finds that the children rely upon each other to meet their needs and such a split would be detrimental.

Michell argues that because the magistrate judge referenced its findings that both children expressed a preference as to where they wanted to live, the interview is necessary to support the magistrate judge's decision and should, therefore, have been recorded, citing our decision in *Strain v. Strain*, 95 Idaho 904, 523 P.2d 36 (1974).

At issue in *Strain* was the modification of a divorce decree. *Id.* at 905, 523 P.2d at 37. The trial court modified the custody provision of the divorce decree and transferred the custody of a child from the mother to the father where there was no evidence in the record to support the modification other than the expressed desires of the child and father. *Id.* at 906, 523 P.2d at 38.

> During a recess in the hearing, the trial court interviewed [the child] in-chambers without the presence of either party. The interview was not recorded, and it was [not] summarized by the trial court. The appellant argues that sufficient evidence must have been presented by [the child] during the interview to warrant the trial court's modification of custody. However, there is no means for this Court to determine whether the in-chambers interview provided sufficient evidence to justify the trial court's decision. It is within the trial court's [discretion] to personally examine children in custody disputes out of the presence of their parents, *but if the interview is necessary to support the trial court's decision, it must be recorded.*

*Id.* (footnote omitted).

Turning to the case at hand, the in-camera interview was not necessary to the magistrate judge's decision. While the magistrate judge discussed the in-camera interview as quoted above in the Memorandum Decision and Order, nothing suggests that the in-camera interview had any bearing on the magistrate judge's final decision. The children expressed opposite preferences as

to where they wanted to live. As we held earlier (*supra* Part IV.B), the magistrate judge had substantial and competent evidence from the trial to award primary custody to Jimmy, and our earlier holding did not rely upon the in-camera interview.

**F. No attorney fees are awarded.**

Jimmy requests an award of attorney fees pursuant to I.C. § 12-121. "Attorney fees pursuant to I.C. § 12-121 are appropriate when this Court is left with an abiding belief that the appeal has been brought or defended frivolously, unreasonably, or without foundation." *Page v. Pasquali*, 150 Idaho 150, __, 244 P.3d 1236, 1239 (2010) (quotation omitted). We do not feel that this appeal was brought frivolously, unreasonably or without foundation; therefore, no attorney fees are awarded.

### V. CONCLUSION

We affirm the magistrate's award of primary physical custody to Jimmy. The magistrate judge abused its discretion in granting Michell the right to care for the children in Jimmy's home on certain mornings, and we remand for the magistrate judge to determine reasonable visitation consistent with this opinion and based upon the evidence in the record. No attorney fees are awarded. Costs to Jimmy.

Justice EISMANN and Justices J. JONES, HORTON and KIDWELL, Pro Tem, **CONCUR.**

18