# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 48532

MICAELA ROSE DELAGARDE,

    Petitioner-Respondent,

v.

LAURENT DELAGARDE,

    Respondent-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)

Filed: December 3, 2021

Melanie Gagnepain, Clerk

THIS IS AN UNPUBLISHED
OPINION AND SHALL NOT
BE CITED AS AUTHORITY

---

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Gerald F. Schroeder, District Judge; Hon. Laurie A. Fortier, Magistrate.

Opinion of the district court, on intermediate appeal from the magistrate court, affirming judgment and decree of divorce, <u>affirmed</u>.

Gravis Law, PLLC; Charles B. Bauer, Boise, for appellant. Charles B. Bauer argued.

Bevis, Thiry & Schindele, P.A.; Jennifer M. Schindele, Boise, for respondent. Jennifer M. Schindele argued.

---

BRAILSFORD, Judge

Laurent Delagarde appeals from the district court's opinion on intermediate appeal, affirming the magistrate court's judgment and decree of divorce. Specifically, Laurent challenges the district court's affirmance of the magistrate court's order granting him five consecutive overnights of summer vacation with his minor child and requiring that Laurent and his ex-wife, Micaela Rose Delagarde, mutually agree to the child obtaining a passport. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Laurent and Micaela divorced in 2019. When the magistrate court entered its judgment and decree of divorce in October 2019, Laurent and Micaela's minor daughter, F.D., was three years old. Laurent is a French citizen with permanent resident status in the United States.

1

Although Laurent lives and works in the United States, his parents and his older daughter live in France. The crux of Laurent's appeal is his ability to travel to France with F.D.

Micaela filed for divorce in January 2019. In Micaela's parenting plan filed with her petition for divorce, she proposed each parent have three days of vacation time with F.D. In response, Laurent filed an answer proposing each parent be allowed "two 1-week vacations each year to be exercised in 7-day blocks." The answer also alleged F.D. "is a dual citizen" of the United States and of France[1] and asserted Laurent "should be permitted to obtain a French passport" for F.D. During the pendency of the divorce, F.D. stayed with Micaela each night but, at some point during the summer of 2019, F.D. began spending one night a week with Laurent.[2]

At mediation, the parties reached a stipulation on numerous issues, including stipulating to joint legal custody of F.D. Regarding joint legal custody, they agreed to "share the major decision-making rights, responsibilities and authority relating to the health, education and general welfare of [F.D.]." The parties, however, did not agree to child support or to a physical custody schedule, with the exception of a holiday schedule. The case proceeded to trial on these issues in September 2019.

At trial, both Micaela and Laurent testified.[3] Regarding vacation time, Laurent testified:

> [W]hat I'd like to have is enough trunk [sic] of time so I can fly over there [to France] with [F.D.] maybe for one week. I think like it's going over week it might be too much, you know, at this time, but less than one week is not even . . . .

---

[1] Despite this allegation, Laurent's testimony at trial suggested F.D. must have a French passport to become a French citizen, and Laurent's counsel denied during oral argument on intermediate appeal that F.D. has French citizenship.

[2] The magistrate court's temporary custody orders are not in the appellate record. The district court's opinion on intermediate appeal states Laurent began having one overnight visit a week in August 2019. The magistrate court's finding rendered on the record, however, states F.D. "has been only spending one overnight per week with her father since June."

[3] The parties apparently presented opening argument at trial regarding Laurent's vacation time. The trial transcript, however, does not include the beginning of the trial. Rather, it begins after Micaela's direct examination had already begun. Also, the record indicates an interpreter was present, but Laurent apparently did not rely on an interpreter to testify.

At the conclusion of the evidence, the magistrate court entered its findings of fact and conclusions of law on the record pursuant to Idaho Rule of Family Law 801.[4]  After the court entered its findings regarding F.D.'s best interests, the court concluded that it would require "the parties to make a determination when it is appropriate for [F.D.] to have a French passport" and that it would allow Laurent five consecutive overnights of summer vacation with F.D.  Regarding this vacation time, the court stated that the five consecutive overnights could not be stacked with Laurent's regular overnight visitation and also that they "will need to happen in the United States absent agreement by the parties."

Thereafter, the magistrate court entered a written judgment and decree of divorce.  This decree ordered the parties to share physical custody of F.D. and increased Laurent's physical custody to two overnights on Fridays and Saturdays, except for the first weekend of the month.  As relevant to this appeal, the decree provides that "commencing the summer of 2020, Laurent may have up to five (5) consecutive overnights of vacation time with [F.D.]"; "Laurent cannot add this time to his regular schedule if it makes the total consecutive overnights greater than five"; and "the parties must mutually agree when it is appropriate to obtain a passport for [F.D.]."  Unlike the court's ruling at trial, the decree did not expressly prohibit Laurent from traveling internationally with F.D.

Laurent moved to amend the magistrate court's findings of fact, conclusions of law, and the judgment or for a new trial, and the court held a hearing on this motion.  Only the post-hearing written order is in the appellate record, and it states the court denied the motion for the reasons "stated on the record at the hearing."  Laurent appealed this denial and the court's decree to the district court.  Specifically, Laurent challenged the magistrate court's limitation of his vacation time with F.D. to five consecutive overnights and the court's requirement that Micaela consent to Laurent obtaining a French passport for F.D.

---

[4]     Laurent complains about the magistrate court's decision to make oral findings, stating: "The trial court only made oral findings, and declined to make more detailed findings when asked to do so."  As the court noted, however, Idaho Rule of Family Law Procedure 801 permits a court to make oral findings and conclusions on the record.  Moreover, Laurent did not object to the court proceeding in this manner but, rather, consented to it.  Accordingly, Laurent is estopped from complaining about the manner in which the court made its findings.  *See Kantor v. Kantor*, 160 Idaho 810, 823, 379 P.3d 1080, 1093 (2016) (noting law is well established that one may not complain about errors to which he consented).

3

Following oral argument, the district court issued a written opinion affirming the magistrate court's decree.[5] The district court concluded that the parties' joint legal custody required them to share the decision to obtain a French passport for F.D. Further, it concluded that the magistrate court considered the factors in Idaho Code § 32-717 to determine F.D.'s best interests; substantial and competent evidence supports the court's limitation on Laurent's vacation time to five consecutive overnights; and the court did not abuse its discretion in imposing this limitation.

The district court also considered and rejected Laurent's argument that the Hague Convention[6] and nonbinding case law from various other state jurisdictions support Laurent's right to travel with F.D. to France. Finally, the court rejected Laurent's argument that the magistrate court substantially prejudiced his rights by restricting his travel. The district court noted that the magistrate court did not impose any travel restriction on Laurent but that his right to travel to France with F.D. was an "abstract right" because of the "restricted timeframe" and "the absence of a passport for [F.D.]."

Laurent timely appeals the district court's affirmance of the magistrate court's decree.

## II.

## STANDARD OF REVIEW

For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate division, we review the magistrate court record to determine whether there is substantial and competent evidence to support the magistrate court's findings of fact and whether the magistrate court's conclusions of law follow from those findings. *Pelayo v. Pelayo*, 154 Idaho 855, 858-59, 303 P.2d 214, 217-18 (2013). As a matter of appellate procedure, however, our disposition of the appeal will affirm or reverse the decision of the district court. *Id*. Thus, we review the magistrate court's findings and conclusions, whether the district court affirmed or reversed the magistrate court and the basis therefore, and either affirm or reverse the district court.

We review a trial court's determinations of child custody for an abuse of discretion. *Kelly v. Kelly*, 165 Idaho 716, 723, 451 P.3d 429, 436 (2019). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the

---

[5] The district court's opinion mentioned the magistrate court's denial of Laurent's motion to amend and for a new trial but did not address it.

[6] Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 89.

trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

If substantial and competent evidence does not support the trial court's findings, the appellate court will find an abuse of discretion. *Kelly*, 165 Idaho at 723, 451 P.3d at 436. In a child custody case, an abuse of discretion occurs if the evidence is insufficient to support the trial court's finding that the children's best interests and welfare are best served by the trial court's order. *Id.* "An appellate court will view the evidence in favor of the trial court's judgment and will uphold the trial court's findings of fact even if there is conflicting evidence." *Schneider v. Schneider*, 151 Idaho 415, 420, 258 P.3d 350, 355 (2011).

## III.

## ANALYSIS

### A. Laurent's Summer Vacation Time

Laurent challenges the district court's affirmance of the magistrate court's custody award limiting his vacation time with F.D. to five consecutive overnights. Laurent argues substantial and competent evidence does not support this limitation and that the magistrate court abused its discretion by imposing the limitation.

Of paramount importance in determining custody issues is the child's welfare and best interests. *Silva v. Silva*, 142 Idaho 900, 904, 136 P.3d 371, 375 (Ct. App. 2006). Idaho Code § 32-717 provides a nonexhaustive list of factors for the trial court to consider when making custody determinations. These factors include the child's wishes; the parents' wishes; the child's interaction with her parents and her siblings; the child's adjustment to her home, school, and community; the mental and physical health and integrity of all individuals involved; the need to promote continuity and stability in the child's life; and the presence of domestic violence. I.C. § 32-717(1)(a)-(g).

In this case, the magistrate court expressly addressed each of these factors in its findings. As related to the issues on appeal, the court found that the child was "far too young to be able to express a wish" about custody; F.D. was "well-acquainted" with her extended family in France, including her sister who has visited two or three times during F.D.'s lifetime; it is important the relationship with Laurent's family continue; F.D. is more adjusted to Micaela's home "because

5

she's spent more time there"; "French preschool" would allow F.D. to "embrace her French heritage"; and at least one custodial exchange was "not a good scene." Further, the court found that F.D. "had some difficulty transitioning after coming back from her father's care"; "had some tantrums and some meltdowns" after those transitions; and "needs continuity and stability in her daily routine," including knowing her schedule and what is going to happen each day. Based on these and other findings, the court concluded that allowing Laurent five consecutive overnights of summer vacation is in F.D.'s best interests.

We conclude substantial and competent evidence supports that the magistrate court's limitation on Laurent's vacation time is in F.D.'s best interests. While no evidence indicates Laurent is an unfit parent, the evidence shows that, at the time of the court's decree, F.D. was still very young; she had only just begun spending one night a week with Laurent a few months before trial; and the parties' custodial exchanges were not yet going smoothly. According to Laurent's own testimony, during one exchange, F.D. was crying and Laurent became "frustrated." Also, when Laurent's counsel asked Laurent to describe the custody schedule he thought would be best for F.D. at that time, Laurent testified:

> She's only 3. I think we can stretch maybe to, you know, *five days a week*, just like four [sic] one time vacation at some point, but I think on regular base like giving those three days maximum without the other parent is something that I would consider be smart.

(Emphasis added.) This testimony indicates Laurent understood that, at least at that time, a five-day vacation would be a "stretch" for F.D. Further, this testimony also supports the conclusion that Laurent meant five days when testifying that he wanted custody of F.D. for "one week" to travel to France, contrary to Laurent's assertion on appeal that by "one week" he meant seven, not five, days. No testimony supports this assertion.

Micaela also testified that "I don't feel like [F.D. is] old enough at this point to travel to France because it would take a long block of time." Contrary to Laurent's assertion, however, this testimony was not the only evidence supporting the magistrate court's limitation on Laurent's vacation time with F.D. As noted above, the court also took into account--among other things-- F.D.'s age, the amount of time she was accustomed to being away from Micaela, F.D.'s behavior, and the custodial transitions. Also contrary to Laurent's assertion, the court did not limit his vacation time with F.D. based on Micaela's testimony about a phone call during which she overheard Laurent inquire about documentation necessary to travel internationally with F.D. The

6

record shows the court did not rely on or even mention, as Laurent describes it, "Micaela's fear about Laurent absconding to France" with F.D.

In addition to the factors identified in I.C. § 32-717(1), Laurent asserts it is in F.D.'s best interests to embrace her French heritage; to benefit from French citizenship; and "to experience [his] family roots, culture, and heritage." Laurent's arguments suggest the magistrate court did not consider F.D.'s French ancestry in determining her best interests. The court, however, did consider this factor. For example, the court noted that F.D. was "well-acquainted" with Laurent's family and was able to connect with them via modern technology; Laurent's older daughter had visited F.D. a few times; and it was important that this family relationship continue. Further, the court allowed Laurent the opportunity to enroll F.D. in French preschool. Based on these findings and conclusions, we disagree with Laurent's suggestion that the court failed to consider the importance of F.D. embracing her French heritage and of benefiting from French citizenship.

We also disagree that the district court failed to evaluate the evidence when reviewing the magistrate court's decision and instead affirmed the decision based on the notion that "time will tell." This argument misconstrues the district court's comments and takes them out of context. Regarding Laurent's ability to travel to France with F.D., the court noted:

> The passage of time and maturation of the child will test whether the restriction should be modified in the future. That passage of time will also test whether the child's mother will consent to or resist the father's desire to obtain a passport for the child.

The court's comments clearly related to Laurent's ability to seek a modification of the magistrate court's decision. In other words, the district court expressed its belief that, as F.D. grows older and matures, the limitation on Laurent's vacation time with F.D. may be modified and that Micaela may possibly consent to obtaining a French passport for F.D. Indeed, the magistrate court expressly invited Laurent to seek further relief if there are "more disagreements with regard to the passport" or if "there is a substantial material change of circumstances."

Further, we reject Laurent's arguments that the magistrate court failed to explain "how limiting [F.D.'s] ability to travel to France [] was the least restrictive means of ensuring her best interest" and that the travel restriction does not have a "substantial, rational basis in the facts." In support of these arguments, Laurent relies on *Bartosz v. Jones*, 146 Idaho 449, 197 P.3d 310 (2008), and *Weiland v. Ruppel*, 139 Idaho 122, 75 P.3d 176 (2003). These cases, however, are inapposite. Both of these cases address the ability of a parent, who has primary physical custody

7

of a child, to relocate her residence out of state with the child, and both cases hold that the State's interest in the child's best interests is a compelling reason permitting the trial court to restrict a parent's fundamental right to travel. *Bartosz*, 146 Idaho at 463, 197 P.3d at 324; *Weiland*, 139 Idaho at 125, 75 P.3d at 179. Laurent fails to cite any authority that this Court must review the limitation on his visitation rights to determine whether it is the least restrictive means of ensuring F.D.'s best interests and has a substantial, rational basis in the facts. Rather, Idaho case law provides that the proper analysis is whether the limitation is in F.D.'s best interests.

Finally, Laurent's reliance on the Hague Convention and nonbinding case law from other jurisdictions is misplaced. Several of the nonbinding cases Laurent cites address a parent's right to travel internationally with a child and the impact of the Hague Convention on that right. *See, e.g.*, *Moore v. Moore*, 349 P.3d 1076, 1080 (Alaska 2015) ("[T]he trial court may look to a number of factors, including whether proposed countries of visitation are Hague Convention signatories."). That the Hague Convention may provide relief for Micaela if Laurent were to abscond with F.D. to France, however, begs the question of whether F.D.'s best interests are served by allowing Laurent more than five consecutive days of vacation time.[7]

## B. French Passport

Laurent also challenges the magistrate court's requirement that "the parties must mutually agree when it is appropriate to obtain a passport for [F.D.]." Laurent's argument is limited to the assertion that the court lacked substantial evidence to "giv[e] Micaela a permanent veto" over a French passport for the child. As the court noted, however, its decision to require Laurent and Micaela to agree jointly to obtain a passport for F.D. is based on the parties' agreement to share joint legal custody of F.D. Affirming this ruling, the district court held that "they have joint legal custody and are required to share in the decision-making rights relating to the general welfare of the child," including the decision to obtain a French passport. *See* I.C. § 32-717B(3) ("'Joint legal custody' means a judicial determination that the parents or parties are required to share the decision-making rights, responsibilities and authority relating to the health, education and general welfare of a child or children.") The decision to obtain a child's passport is a decision involving

---

[7]    The record on appeal does not indicate that Laurent raised before the magistrate court either the argument about the Hague Convention or about "the least restrictive means" of ensuring F.D.'s best interests. Micaela, however, does not argue Laurent failed to preserve these arguments for appeal, and the district court addressed the arguments. For this reason, we address them.

the child's general welfare, which must be shared under joint legal custody. Laurent does not contest this proposition. Accordingly, the district court did not err by affirming the magistrate court's conclusion that the decision to obtain a French passport for F.D. is a decision the parents' share under joint legal custody.

## C.    Attorney Fees

Micaela is the prevailing party on appeal and seeks an award of attorney fees under I.C. § 12-121. An award under this provision is appropriate if the nonprevailing party pursued, defended, or brought the appeal frivolously, unreasonably, or without foundation. *Clark v. Jones Gledhill Fuhrman Gourley, P.A.*, 163 Idaho 215, 230, 409 P.3d 795, 810 (2017). To receive an award of attorney fees under I.C. § 12-121, the entire appeal must have been pursued frivolously, unreasonably, and without foundation. *Shepherd v. Shepherd*, 161 Idaho 14, 21, 383 P.3d 693, 700 (2016). Such circumstances exist when an appellant has only asked the appellate court to second-guess the trial court by reweighing the evidence, has failed to show that the trial court incorrectly applied well-established law, or has failed to provide authority or legal argument in support of the party's assertion. We decline to award attorney fees under I.C. § 12-121 because we cannot conclude Laurent's appeal was entirely frivolous.

**IV.**

**CONCLUSION**

We affirm the district court's opinion affirming the magistrate court's judgment and decree. Further, we award Micaela costs under Idaho Appellate Rule 40 as the prevailing party but decline to award her attorney fees under I.C. § 12-121.

Judge GRATTON and Judge LORELLO **CONCUR**.