# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 42141

| | |
|---|---|
| HILARY BETH CANDLAND FIRMAGE fka HILARY SNOW, <br><br> Plaintiff-Respondent, <br><br> v. <br><br> HOWARD HUNTER SNOW, <br><br> Defendant-Appellant. | Boise, September 2014 Term <br><br> 2015 Opinion No. 24 <br><br> Filed: February 26, 2015 <br><br> Stephen W. Kenyon, Clerk |

Appeal from the Magistrate Court of the Fourth Judicial District of the State of Idaho, Ada County.  Hon. Russell A. Comstock, Magistrate Judge.

The custody modification order of the magistrate court is <u>affirmed</u>.

Howard Hunter Snow, appellant pro se argued.

Ludwig Shoufler Miller Johnson LLP, Boise, for respondent. Daniel A. Miller argued.

———————————

J. JONES, Justice

This case was brought before the magistrate court as a request for modification of the child custody arrangement of the parties' four children, in which Hilary Firmage sought sole custody and permission to relocate. The parties orally stipulated to resolve the custody matter in favor of the future recommendations that would result from a child custody evaluation that was ongoing at that time. When the evaluation was made available, the magistrate court ordered a custody modification conforming to the evaluator's recommendations. Snow appealed the modification order. Following argument, we temporarily remanded the case to the trial court to issue specific written findings and conclusions as to the best interests of the children in this case. Such written findings and conclusions have been furnished for the record and the parties have had the opportunity to supplement their briefing with regard to the same. We affirm.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

Ms. Hilary Firmage and Mr. Howard Snow were married from 1992 until 2010, when

1

they stipulated to a divorce based on irreconcilable differences. They had four children during that time. From the time of their divorce in 2010 until January 2014, the custody arrangement was that the children spent all weekdays and the last weekend of each month with Firmage and spent the first three weekends of each month with Snow. In 2012, both parties sought modification of the custody arrangement, Snow seeking 50/50 custody and Firmage seeking sole custody and permission to relocate to Utah to live with her new husband. Trial was set for November 2013. Upon Firmage's motion, the court appointed Dr. Robert Engle to perform a child custody evaluation. At the time of the pre-trial conference, Dr. Engle had not yet finished the evaluation, and Snow went to the conference under the impression that the trial would be set to a later date because of the delay in getting the evaluation. When the matter of the custody evaluation was raised at that conference, Snow orally offered to resolve the case in favor of the forthcoming recommendations of the custody evaluator to avoid the necessity of a trial. Firmage accepted the offer. The court accepted the parties' stipulation, vacated the trial, and suggested that the parties meet following the release of the custody evaluation to work out any details not addressed in that evaluation. The court also stated that the parties would have a conference with the court following release of the recommendations where the court would make a record of the stipulation and enter an order on the custody issues.

Dr. Engle's completed report recommended, among several other things, that: (1) Firmage be permitted to relocate to Utah with the three youngest children, of which she was to have sole legal custody; (2) Snow was to have sole legal custody of the oldest child;[1] and (3) for the first year of the arrangement, Snow's contact with the three youngest children would consist of approximately six weeks of the year when they would stay with Snow and weekly thirty-minute phone calls with the children, which were to be recorded to ensure no disparaging remarks were made to the children about Firmage. Upon receipt of the custody evaluation, the court set a status conference, and Firmage's attorney sent Snow a copy of a proposed final order that adopted the recommendations. Snow responded to Firmage's attorney, expressing his strong disagreement with the recommendations and saying he would not go along with their stipulation to abide by those recommendations. Firmage moved the trial court for an interim order allowing her to relocate to Utah with the three youngest children, for enforcement of the pre-trial

---

[1] According to a finding of fact by the magistrate court, the eldest child was born in November of 1996 and therefore attained adulthood during the pendency of this appeal. The issue of such child's custody is therefore rendered moot.

stipulation, and for entry of final judgment as per the evaluator's recommendations. At a January 27 hearing on Firmage's motion, Snow argued the recommendations were contrary to Idaho law and that the court should not enforce the pre-trial stipulation. Finding that Snow was no longer willing to abide by his stipulation and that there would be prejudice to Firmage and the children if Snow were not held to his stipulation, the magistrate court made a final order for custody modification. The court stated that the custody evaluation "I think covers all of the—considers properly the factors that support the 32-717. He's an experienced custody evaluator, and I just don't see there's a reasonable basis to allow you to rescind your agreement, Mr. Snow."

The court then vacated the status conference that had been scheduled for February. Snow moved to reconsider. In March, the trial court heard argument and denied Snow's motion to reconsider. This Court then granted Snow's motion for permissive appeal under I.A.R. 12.1. Following argument on appeal, we temporarily remanded the case to the magistrate court to issue written findings as to the best interests of the children. Having now received those findings, we affirm the magistrate court.

## II.
## ISSUES ON APPEAL

1.  Whether the magistrate court abused its discretion in ordering the child custody modification.

2.  Whether the order requiring that Snow's phone calls with his children be recorded violates his constitutional right to privacy.

3.  Whether Firmage is entitled to attorney fees on appeal.

## III.
## ANALYSIS

### A. The magistrate court did not abuse its discretion in ordering the child custody modification.

In his appeal, Snow does not directly attack specific findings of fact made by the magistrate court, nor does he raise issues as to which of the parties bore the burden of proof. Rather, Snow argues that the magistrate court abused its discretion by "failing to correctly analyze the best interests of the children as directed by I.C. § 32-717, and failing to clearly state the reasons why a denial of joint custody was orders [sic] as dictated by I.C. § 32-717B." He also argues that the magistrate court abused its discretion by relying on the evaluator's findings and adopting those findings as its own. In his supplemental brief submitted after the entry of the

3

magistrate court's written findings, Snow expands on this argument, claiming that the magistrate court erred in relying upon Dr. Engle's findings because they were unreliable and inadmissible hearsay.

This Court set out the applicable standard of review in *Suter v. Biggers*, 157 Idaho 542, 546, 337 P.3d 1271, 1275 (2014):

> A trial court's child custody decision will not be overturned absent an abuse of discretion. A trial court does not abuse its discretion as long as the court recognizes the issue as one of discretion, acts within the outer limits of its discretion and consistently with the legal standards applicable to the available choices, and reaches its decision through an exercise of reason. When the trial court's decisions affect children, the best interests of the child is the primary consideration.

(Internal citation and quotations omitted).

Idaho Code section 32-717(1) provides that "the court may, before and after judgment [for divorce], give such direction for the custody, care and education of the children of the marriage as may seem necessary or proper in the best interests of the children." That section goes on to provide a list of factors the trial court may consider in making its custody determination,

(a)     The wishes of the child's parent or parents as to his or her custody;

(b)     The wishes of the child as to his or her custodian;

(c)     The interaction and interrelationship of the child with his or her parent or parents, and his or her siblings;

(d)     The child's adjustment to his or her home, school, and community;

(e)     The character and circumstances of all individuals involved;

(f)     The need to promote continuity and stability in the life of the child; and

(g)     Domestic violence as defined in section 39-6303, Idaho Code, whether or not in the presence of the child.

I.C. § 32-717(1). "This list of factors is not exhaustive or mandatory and courts are free to consider other factors that may be relevant." *Bartosz v. Jones*, 146 Idaho 449, 454, 197 P.3d 310, 315 (2008). The factors are relevant to a determination of physical custody, legal custody, and relocation of the custodial parent. *See id.* at 454–55, 197 P.3d at 315–16. Except in a case involving a parent who is a habitual perpetrator of domestic violence, "there shall be a presumption that joint custody is in the best interests of a minor child or children," which presumption may be overcome by a preponderance of the evidence to the contrary. I.C. § 32-717B(4)&(5). If a court "declines to enter an order awarding joint custody, the court shall state in

4

its decision the reasons for denial of an award of joint custody." I.C. § 32-717B(1).

The Idaho Rules of Family Law Procedure[2] (IRFLP) authorize the trial court to appoint a "parenting time evaluator" to

> investigat[e] and analy[ze] the best interest of children with regard to disputed parenting time issues . . . [with t]he purpose of . . . provid[ing] the Court with information it may consider to make decisions regarding custody and parenting time arrangements that are in the child's best interest. This is accomplished, among other things, by assessing the capacity to parent, and the developmental, emotional, and physical needs of the child. Unless otherwise specified in the order, evaluators must consider and respond to the factors set forth at Idaho Code Section 32-717.

IRFLP 719.A. An evaluator may be appointed "in any action involving custody of minor children to assist the trier of fact with matters that affect the best interest of the child." IRFLP 719.B. "The court may consider the information contained in the report in making a decision on the parenting plan, and the Idaho Rules of Evidence do not exclude the report from consideration." IRFLP 719.I.

IRFLP 104.F provides that when the parties enter a stipulation, that stipulation to the court is "considered as a joint motion by the parties to the court for its consideration, and shall not be binding on the court." Therefore, the trial court has discretion to accept or reject the stipulation in the first place and to later bind the parties to, or release them from, that stipulation. An "[o]ral stipulation[] of the parties in the presence of the court [is] generally held to be binding [on the parties], especially when acted upon or entered on the court records." *Kohring v. Robertson*, 137 Idaho 94, 99, 44 P.3d 1149, 1154 (2002). So, although the court is not bound by the parties' stipulations to certain facts or evidence, the parties are so bound and are not in a position to later challenge those facts or evidence. *See Ratliff v. Ratliff*, 129 Idaho 422, 425, 925 P.2d 1121, 1124 (1996).

In *Ratliff*, the parties had stipulated to a modification of a custody order based solely on the recommendations of Dr. Craig Beaver, who had acted as a negotiator between the parties in a high conflict custody dispute. *Id.* The only difference between *Ratliff* and this case is that there the expert's recommendations were known at the time the parties stipulated to abide by them. The mother objected to certain of Dr. Beaver's recommendations after he placed them on the

---

[2] On January 1, 2013, the Fourth Judicial District adopted a pilot version of the Idaho Rules of Family Law Procedure. On July 1, 2014, it formally adopted the final version of those rules, which apply to all modification proceedings thereafter filed. IRFLP 101.A.

court record but this Court held she was bound by "the stipulation that was represented before the magistrate court." And, further, "[b]ecause we conclude that the parties stipulated to a change in custody, we do not consider [mother's] other arguments concerning the sufficiency of the evidence supporting the order." *Id.* (citing *Perry v. Schaumann*, 110 Idaho 596, 598, 716 P.2d 1368, 1370 (Ct. App. 1986) (stating that stipulations are a form of judicial admission which obviate the necessity for proof of facts within the ambit of the stipulation)).

The IRFLP provisions and *Ratliff*, together with the parties' stipulation to resolve the custody issues in accordance with Dr. Engle's recommendations, address Snow's claims as to the admissibility and reliability of Dr. Engle's recommendations. At the time the parties entered into their stipulation, it does not appear that they knew what Dr. Engle was going to recommend. However, it cannot be argued that his report, including the findings and recommendations, was somehow inadmissible or unreliable evidence for the court to consider.

Because the parties cannot agree to divest the court of its discretionary power in favor of another decision-maker, when they agreed to resolve the custody matter in accordance with Dr. Engle's recommendations, the parties were in substance agreeing to allow Dr. Engle's custody evaluation to be the only evidence the trial court considered in making its independent decision as to the best interests of the children. A custody evaluator can be a valuable tool in custody decisions. He or she has the opportunity to spend one-on-one time with the children in the case, observe the children interacting with the parents, and witness first-hand the environments in which the children would be living if in the custody of each parent. Although not binding on the court, it is clearly proper for trial judges to give careful consideration to the recommendations of a parenting time evaluator in determining what is in the best interests of the children. Dr. Engle: listed over eighty sources he consulted before making his final report; considered, among other items, letters of recommendation, court documents, police records, and the children's report cards; personally interviewed each child and adult involved; observed the children interacting with the parents and siblings in each parent's home; conducted psychological evaluations of the parents and their partners; and submitted a thirty-seven page report explaining what he had done, what he had found, what he was recommending, and why he considered the custody recommendations were best for the interests of the children. In the course of his investigation, Dr. Engle was able to observe things the court would have been unable to observe in the courtroom setting. This type of in-depth analysis is what makes a parenting time evaluation such

a valuable tool.

In ultimately deciding to modify the parties' child custody arrangement in a way that conformed to Dr. Engle's recommendations, the trial court properly weighed the evidence in that evaluation as it applied to the pertinent statutory factors. Considering those factors, the trial court noted the parents' wishes regarding custody were apparent from each of their pleadings and the custody evaluation. Firmage desired sole custody and permission to relocate. Snow desired an equally shared arrangement. As to the wishes of the children, the court found the evidence to show that, while none of the children wanted to relocate to Utah, the oldest child wished to live with Snow, the second oldest child wished to live with Firmage, and the two youngest children were more ambivalent about the custody arrangement they desired. These desires of the children were reflected in the report of Dr. Engle's interviews with the children.

Based on the parties' history before the court as well as Dr. Engle's report on interviews with the parents and children, the court found the case involves substantial on-going conflict between the parents to which the children were regularly exposed, coupled with a lack of mutual support between the parents. The court noted that in such cases it places greater weight on (1) the children's interactions with their parents and siblings, (2) the character of the individuals involved, and (3) the need to promote stability in the children's lives, especially the younger children.

The children's interactions with their parents and siblings support the custody modification. The court found the children were over-exposed to parental conflict, primarily caused by Snow. It stated the conflict was overburdening the parties' second child, was causing depression to the point of suicidal ideation in their third child, and was causing overeating in their fourth child. The court found the situation was sufficiently deteriorated that there would not likely be a positive change unless a modification to the custody arrangement was made. These findings with respect to the children's interactions with their parents and each other are supported by the following evidence in the evaluation.

Dr. Engle's report showed Snow had told the parties' second child an inappropriate amount of information about the parties' divorce. The child has shown and expressed a desire not to see Snow at all. On one occasion the child went to Snow's house and ended up calling Firmage, saying he wanted to hurt himself, requiring the police to respond. The child stated that "Dad threatens to leave us all the time because we're not loyal to him. I have to go to my mom

and say we want 50/50 [custody]." The child said that Snow threatened to take him out of his established school district if the child wanted to stay with Firmage. He stated that Snow "for several years bad mouthed [Firmage]." The child said that Snow is not truthful with him. When Dr. Engle asked the youngest child what he would wish for if he had three wishes, the youngest child's first wish was that Snow would be nicer to the parties' second child, which demonstrates the degree of hostility between the two. Dr. Engle opined that the custody battle has forced the child into a sense of hyper-responsibility that is too big a burden for a child of his age.

The parties' third child said that Snow told him that if he wanted to see Firmage, Snow "was done with" the child. The child said that Snow was talking to him a great deal about the conflict between Snow and Firmage. He reported that "because of the custody battle" he had said at one point that he "was really stressed and wanted to die." This resulted in an emergency room visit. Dr. Engle stated, "As a result of this documented suicidal ideation and semi-structured suicide plan, [the child] was referred to Saint Alphonsus Hospital." The child was prescribed Celexa, an antidepressant. Dr. Engle stated that "[the child] has described being suicidal a number of times to various individuals, including several third-party professionals." The child told one medical professional that the causes of his suicidal thoughts included Snow's campaign for 50/50 custody and Snow's chronic disparagement of Firmage. Additionally, Dr. Engle found the child to be very frightened of Snow's reaction to an expression of the child's desire for anything other than a 50/50 custody arrangement.

As to the parties' fourth child, Dr. Engle's evaluation showed the child did not have a lot of energy and had a weight problem. Dr. Engle concluded the child's overeating "is a symptom of the unhappiness he goes great lengths to conceal." When staying at Snow's house, the child often requested to sleep in bed with Snow, which Dr. Engle concluded is a symptom of anxiety and negative mood. When asked what he would wish for if he could have three wishes, the child responded, "My dad to be nicer to [the parties' second child], my step-dad to be nicer to [the parties' oldest child], and my dad and mom to be nicer to each other." The fact that all three of the child's greatest wishes involved reducing conflict in familial relationships highlights how severe the problem was with the current arrangement. It is clear that the regular exposure to conflict was adversely affecting all the children's relationships with each parent.

In addition to deteriorating relationships, the court found the comparison of each party's character to favor primary custody of the three youngest children to be with Firmage in Utah.

The court found Snow had inappropriately used the dispute as a tool to measure and influence the children's loyalty to each parent. It further found that Firmage's motivations in relocating were to benefit the children by withdrawing the family from the constant conflict and putting them in a more stable financial situation. These findings are also supported by substantial evidence in the evaluation. On multiple occasions, Snow damaged Firmage's property, the most severe case being when Snow threw a piece of concrete curbing through Firmage's front window, causing damage to property inside her house as well. Snow has repeatedly filed contempt actions and called the police for minor incidents. The evaluation shows that Snow has continued to expose the children to aspects of the divorce that are not appropriate for them to know. Snow admits to talking to his children about the parental disputes. He has even gone so far as to discuss marital infidelity and Firmage's private medical records with one of the children. Despite the effects of Snow's actions, Dr. Engle opined that Snow "lacked insight into how his negative feelings toward [Firmage] were adversely affecting the children."

The trial court found all the evidence discussed above showed that Snow's behavior is destabilizing to the children. Although the children were established in their homes, schools, and communities in Ada County, Idaho, merely being in the same living situation for many years does not necessarily equate to continuity and stability. There are many things in Dr. Engle's report that evidence psychological discontinuity and instability. Ultimately, the court found the relocation would result in significantly improved stability for the children because their exposure to the conflict would be significantly reduced. As the trial court stated, moving to Utah may require a short-term adjustment for the children that they may not like at first, but the distance from the conflict will likely benefit them in the long term. Additionally, the new situation would also provide more financial stability to the children, as Firmage's husband has secured more lucrative employment in Utah.

Both in hearings at the trial level and in the trial court's written findings of fact, the court correctly recognized the question of child custody modification to be within its discretion. By properly applying the statutory factors to this case and weighing them against one another, the trial court acted within the scope of its discretion and consistently with the applicable legal theories. Additionally, the court issued a thorough, well-reasoned analysis in its Findings of Fact and Conclusions of Law, showing that it reached its decision by the exercise of reason. Therefore

9

we hold that the trial court did not abuse its discretion in ordering the modification.[3]

**B.    The trial court's order that Snow's conversations with his children be recorded does not violate his right to privacy.**

Snow argues that the trial court's order violates his constitutional right to privacy by ordering that his phone calls with his children be recorded.[4] Protecting the best interests of children is a compelling state interest sufficient to warrant certain limits on their parents' fundamental constitutional rights when those limits are necessary to protect the children's best interests. *See Bartosz*, 146 Idaho at 462–63, 197 P.3d at 323–24.[5] The limitation on a parent's fundamental right "is necessary to serve a compelling government interest when it is the least restrictive way to achieve the government's objective." *Id.* at 463, 197 P.3d at 324.

Here, the children's psychological well-being and their relationships with their mother and siblings are at stake with respect to their phone calls with Snow. There is evidence in the record that Snow has continued to manipulate the children and expose them to elements of the divorce and custody battle to which it is not appropriate for them to be exposed. There is evidence that Snow consistently speaks about Firmage disparagingly to the children and pressures them to side with him in the dispute. Dr. Engle concluded that a primary cause of the "psychological and behavioral disturbances" the children are experiencing is their "over-exposure to their parents' conflict with one another," and that this over-exposure is primarily being created and maintained by Snow. The court ordered the recording of phone calls for the first year of the new custody arrangement to ensure the disparaging remarks about Firmage and her husband do not continue to contribute to psychological disturbance in the children's lives. Given that the conflict between the parents has apparently been ongoing since their divorce four years ago, further steps are necessary to put an end to it. Although Snow claims the phone-call

---

[3] Additionally, Snow appealed the trial court's decision not to release Snow from the parties' pre-trial stipulation. He argued that it was an abuse of discretion not to release the parties under Idaho Rule of Civil Procedure 6(e)(3) "at the expense of the children's best interests." Because today we affirm the trial court's finding that the modification is in the children's best interests, we need not address Snow's argument that is based on the premise that the stipulation was upheld at the expense of the children's best interests.

[4] As we stated in *Cowles Publishing Company v. Kootenai County Board of Commissioners*, "The Federal Constitution protects a 'zone of privacy.' This includes an individual's interest in having certain personal matters remain private. However, the exact contours of this zone of privacy are not well established." 144 Idaho 259, 265, 159 P.3d 896, 902 (2007) (internal citations omitted). Snow has not cited any authority for the proposition that the recording of his weekly thirty-minute phone calls with the children for the duration of one year is a situation that falls under the protection of the fundamental right to privacy. For purposes of the Court's analysis today, we assume, but do not decide, that it does.

[5] Although *Bartosz* is in the context of a restriction on a parent's constitutional right to travel, the Court's reasoning applies equally well in this case.

recording implicates his right to privacy, it is not an overly-restrictive limitation. At most, he is only exposed to being recorded for thirty minutes per week for one year from the date of the order, which was January 30, 2014.[6] Further, if Snow feels he simply cannot abide by the order because he must speak disparagingly about Firmage, he is not required to make the weekly phone call, and then he will not be subjected to the phone-call recording. Finally, these phone calls are not the only form of communication Snow has with his children. The custody modification ordered that the children would spend approximately six weeks with Snow over the course of the year, and there does not appear to be any restrictions on his ability to engage in written communication with the children. Because the alleged violation of his right to privacy is so limited, it appears to be the least restrictive means of achieving the necessary state interest of ensuring these children's psychological well-being and positive familial relationships.

**C.      Firmage is not entitled to attorney fees on appeal.**

Firmage seeks attorney fees on appeal under Idaho Code section 12-121 and Idaho Rule of Civil Procedure 54(e)(1) because she argues Snow brought the appeal without a legal or factual basis. This Court will not award attorney fees under that statute "if the losing party brought the appeal in good faith and presented a genuine issue of law. In normal circumstances, attorney fees will only be awarded when this Court is left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation." *Clearwater REI, LLC v. Boling*, 155 Idaho 954, 962, 318 P.3d 944, 952 (2014) (internal citations and quotations omitted).

Though we are not persuaded by his arguments, it appears that Snow initially appealed based on a good faith belief that the trial court had abused its discretion in failing to expressly analyze the best interests of the children in written findings of fact and conclusions of law. Snow made a number of reasonable arguments based on his reading of the relevant statutes and case law. Therefore, we are not left with the belief that this appeal was brought frivolously, unreasonably, or without foundation, and attorney fees are not appropriate.

**IV.
CONCLUSION**

We affirm the magistrate court's order of the child custody modification. Costs are awarded to Firmage, but no attorney fees.

---

[6] It is worth noting that, at the time of this opinion, the first year following the trial court's order has passed.

11

Chief Justice BURDICK, and Justices EISMANN and HORTON, and Justice Pro Tem WALTERS CONCUR.