**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 46748**

| | | |
|---|---|---|
| **BRANDON REYES KELLY,** | ) | **Boise, June 2019 Term** |
| | ) | |
| Petitioner-Respondent, | ) | **Filed: October 25, 2019** |
| | ) | |
| v. | ) | **Karel A. Lehrman, Clerk** |
| | ) | |
| **BRANDI LEIGH KELLY,** | ) | **SUBSTITUTE OPINION. THE** |
| | ) | **COURT'S PRIOR OPINION** |
| Respondent-Appellant. | ) | **DATED SEPTEMBER 14, 2019,** |
| | ) | **IS HEREBY WITHDRAWN** |
| | ) | |
| | ) | |

Appeal from the Magistrate Court of the Seventh Judicial District of the State of Idaho, Bonneville County. L. Mark Riddoch, Magistrate Judge.

The magistrate court's award of sole legal custody and primary physical custody to Brandon is <u>vacated</u> and the case is <u>remanded</u> for a new trial. No attorney fees or costs are awarded.

David A. Johnson, P.A., Idaho Falls, attorney for Appellant. David A. Johnson argued.

Smith Woolf Anderson & Wilkinson, PLLC, Idaho Falls, attorneys for Respondent on appeal. Aaron J. Woolf argued.

BEVAN, Justice

## I. NATURE OF THE CASE

This is a custody dispute. Brandi and Brandon Kelly were married and had a son. After about two years of marriage Brandon filed for divorce. Once the divorce was final the magistrate court awarded sole legal custody and primary physical custody of the boy to Brandon. Brandi filed a permissive appeal, arguing the magistrate court erred by relying on an inadmissible parenting time evaluation and following the recommendations of a biased evaluator. We vacate

the child custody judgment and remand for a new trial, but we affirm certain evidentiary rulings for guidance upon remand.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Brandi and Brandon started dating in March 2014. Brandon owned a home in Idaho Falls, Idaho, and in August 2014, Brandi moved in with Brandon. Brandi and Brandon married on April 20, 2015. Shortly after the parties married, in June 2015, they had a son ("Child"). Brandon is a neurosurgeon practicing in Idaho Falls. He is a 50% owner in Idaho Neurosurgery and Spine, PLLC. Brandon's LLC has a professional services agreement with Eastern Idaho Regional Medical Center where he provides on-call services. Brandi worked as a loan officer for D.L. Evans Bank before Child's birth, but then stayed home to care for Child, and her son from a prior relationship.

Brandon filed for divorce on May 30, 2017. On the same day, Brandon filed a notice of strict compliance with the Idaho Rules of Evidence. At first, Brandon requested that the parties share legal custody of Child, with Brandi having primary physical custody and Brandon having visitation as agreed upon by the parties. The parties agreed that Brandi would remain in Brandon's Idaho Falls home with primary physical custody of Child and that Brandon would move in with his parents who lived in the same neighborhood.

In November 2017, Brandon retained Dr. Jane McNaught, a nationally renowned psychologist from Minnesota, to review certain documents and information to determine whether Brandi was engaging in conduct that constituted parental alienation. In the letter formalizing the retention of Dr. McNaught and enclosing the fee agreement and retainer fee, Brandon's lawyer wrote: "he [Brandon] is fearful that his wife has been alienating his son from him . . . . I have enclosed a DVD which contains several pieces of documentation and information which we would like you to consider, and to determine whether or not you believe that parental alienation is taking place." About a month later, Dr. McNaught responded to Brandon's lawyer, explaining that she had reviewed the records the attorney had given her, but was not able to form any opinions based on those records. Dr. McNaught recommended that the trial court should consider ordering a parenting time evaluation to evaluate the best interests of the child.

Three days later, Brandon filed a motion for the court to appoint a parenting time evaluator under Idaho Rule of Family Law Procedure ("IRFLP") 719. Brandon requested that the court appoint Dr. Jane McNaught as the parenting time evaluator, or in the alternative, as his

2

own expert under Idaho Rule of Evidence 706. Brandi objected to Brandon's request for a parenting time evaluator citing, among other things, that Brandi's medical or mental state was not relevant and that Dr. McNaught would not likely be a neutral party.

The magistrate court entered an order declining to appoint Dr. McNaught as the court's expert; however, the court allowed Brandon to hire Dr. McNaught as his expert to conduct a parenting time evaluation consistent with IRFLP 719. The court ordered both parties to comply with any and all reasonable requests made by Dr. McNaught and any expert hired by Brandi. Brandi objected again, arguing that Brandon had failed to disclose that Dr. McNaught had been consulting and advising him in this matter. Brandi alleged that Brandon at first tried to cover up the retention of Dr. McNaught by blacking out her name on a check written in November 2017, prior to the magistrate court's appointment. Brandi maintained that Brandon was trying to circumvent the court's order denying Dr. McNaught as the court's evaluator under IRFLP 719 by having Dr. McNaught as his own expert.

On February 12, 2018, Brandi filed a disclosure naming Robert Engle, Ph.D., as an expert to evaluate child custody issues per the magistrate court's order. On February 20, 2018, Brandi moved the court to appoint Dr. Engle as a parenting time evaluator under IRFLP 719. Brandon objected. The magistrate court entered an order declining to appoint Dr. Engle as the court's expert; however, the court allowed Brandi to hire Dr. Engle to conduct a parenting time evaluation as her own expert and ordered both parties to comply with all reasonable requests made by Dr. Engle.

On March 23, 2018, Brandon filed a second amended petition for divorce. The second amended petition still requested that the parties share legal custody, but now Brandon asked to be awarded primary physical custody of Child, with Brandi being awarded visitation as agreed on by the parties.

Sometime before trial, Brandi moved in limine requesting that the court exclude Dr. McNaught as a witness and prohibit her from providing any testimony in the case, directly or indirectly, including through any report.[1] This motion also requested that another expert Brandon had disclosed, Dr. Woodruff, only be allowed to provide general testimony as to the areas disclosed previously.

---

[1] Brandi's motion in limine is cut off on page 3 in the record. As a result, it is unclear what date the motion was filed and what the extent of Brandi's argument was.

On April 24, 2018, the court entered an order bifurcating the case. All the issues—except for custody, visitation, and child support—went to trial on April 24, 2018 through April 27, 2018. On May 1, 2018, the magistrate court entered a judgment and decree of divorce.

At a hearing on August 28, 2018, the magistrate court denied Brandi's motion in limine to strike Dr. McNaught's report. The court clarified that it was treating Dr. McNaught as Brandon's expert who was not under the direction of the court, recognizing that under IRFLP 719 a parenting time evaluator may be involved in a case either by order or by stipulation. The court explained its earlier order:

> Now here what I did is I authorized each side to have an expert, and I ordered that each side cooperate with that [expert] . . . each side would have knowledge of what the other side was submitting to that person. So I distinguish that in my mind.

The custody and visitation trial took place from September 11, 2018 through September 14, 2018. Dr. McNaught testified at trial about the parenting time evaluation she had conducted. Dr. McNaught was largely concerned with her belief that Brandi suffered from untreated mental health issues. As such, Dr. McNaught recommended that Brandi be evaluated by a board-certified psychiatrist and comply with any suggested medications as long as her psychiatrist advised she do so. Dr. McNaught proposed that until Brandi complied with these recommendations that she not transport or make decisions regarding Child's medical care and educational programming. Brandi's expert, Dr. Engle, also testified at trial, but Dr. Engle explained that he refused to do a parenting time evaluation because he was not appointed by the court; as such, Dr. Engle reasoned he lacked the authority to have both parents and the child involved in the evaluation. Instead, Dr. Engle conducted a psychological evaluation of Brandi.

On November 19, 2018, the magistrate court entered its findings of fact and conclusions of law. The court recognized that Brandi's primary concerns were Brandon's long work hours and on call schedule preventing him from spending sufficient time with Child, as well as his introverted nature. On the other hand, Brandon was concerned about Brandi's parenting ability as well as her psychological and emotional stability. The magistrate court examined these concerns and recognized that both parents had shown their commitment to Child, but often Brandi's behavior was erratic and out of control, including a pattern of making demeaning statements towards Brandon in front of Child and denying Brandon visitation. Before the magistrate court even reached the expert testimony and opinions, the judge conveyed he had

4

serious concerns about Brandi's psychological and emotional stability for parenting Child based on his own observations of Brandi's conduct from the evidence submitted during pretrial motions.

After considering the expert testimony and reviewing each of the factors in Idaho Code section 32-717, the magistrate court determined it was in Child's best interests that the parties be awarded joint physical custody, with Brandon receiving primary physical custody and sole legal custody of Child. The court found Brandi had multiple parenting deficits: 1) she had not shown she could communicate appropriately with Brandon; 2) she could not behave positively during exchanges; and 3) she could not effectively co-parent at that time. On December 12, 2018, the magistrate court entered a judgment. Brandi filed a permissive appeal of the magistrate court's custody award.

### III. ISSUES ON APPEAL

**1.** Whether the magistrate court abused its discretion in allowing Dr. McNaught to conduct a parenting time evaluation as Brandon's expert.

**2.** Whether the magistrate court abused its discretion in permitting Dr. Evans' testimony.

**3.** Whether the magistrate court abused its discretion in admitting Dr. Woodruff's report.

**4.** Whether the magistrate court abused its discretion in awarding Brandon sole legal custody and primary physical custody of Child.

**5.** Whether the magistrate court erred in ordering Brandi to undergo a psychological evaluation and attend weekly mental health counseling.

**6.** Whether the magistrate court abused its discretion in its discovery determinations.

**7.** Whether the magistrate court erred by requiring Brandi to reside in Bonneville County as a condition to having any physical custody of Child.

**8.** Whether either party is entitled to attorney fees and costs on appeal.

### IV. STANDARD OF REVIEW

This Court reviews child custody determinations under an abuse of discretion standard. *Clair v. Clair*, 153 Idaho 278, 282, 281 P.3d 115, 119 (2012) (citing *Schneider v. Schneider*, 151 Idaho 415, 420, 258 P.3d 350, 355 (2011)). Under this standard the Court asks whether the magistrate court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018). An abuse of discretion is found

when the magistrate court's "findings are clearly erroneous such that the court's findings are not based on substantial and competent evidence." *Clair*, 153 Idaho at 282, 281 P.3d at 119 (quoting *Schneider*, 151 Idaho at 420, 258 P.3d at 355). "In a decision regarding a custody award or modification, '[a]n abuse of discretion occurs when the evidence is insufficient to support a magistrate's conclusion that the interests and welfare of the children would be best served' by the magistrate court's order." *Id.* (quoting *Nelson v. Nelson*, 144 Idaho 710, 713, 170 P.3d 375, 378 (2007)). In determining the best interest of the child, the Court must consider all relevant statutory factors, which include

    (a) The wishes of the child's parent or parents as to his or her custody;

    (b) The wishes of the child as to his or her custodian;

    (c) The interaction and interrelationship of the child with his or her parent or parents, and his or her siblings;

    (d) The child's adjustment to his or her home, school, and community;

    (e) The character and circumstances of all individuals involved;

    (f) The need to promote continuity and stability in the life of the child; and

    (g) Domestic violence as defined in section 39-6303, Idaho Code, whether or not in the presence of the child.

I.C. § 32-717.

## V. ANALYSIS

As a threshold matter, Brandi asserts that Brandon's briefing violates Idaho Appellate Rule 35(b)(3) based on his 27-page statement of facts. While the rule calls for the respondent to provide simply a "statement of the case to the extent that the respondent disagrees with the statement of the case set forth in appellant's brief," this is a complicated custody case with an extensive record. We therefore take no adverse action against Brandon based on the scope of the statement of facts in his brief.

**A.**     **The magistrate court abused its discretion by permitting Brandon to hire Dr. McNaught to perform a parenting time evaluation as his expert.**

Brandi argues that the magistrate court abused its discretion in several respects; however, most of the errors stem from the magistrate court's reliance on Brandon's experts, particularly Dr. McNaught. Before trial, the magistrate court allowed Brandon to retain Dr. McNaught to perform a parenting time evaluation as his expert. In doing so, the court specifically declined to appoint Dr. McNaught as the court's expert under IRFLP 719.

6

In general, "[t]he trial court has broad discretion to admit or exclude evidence, and to determine whether a witness is qualified as an expert." *Clair v. Clair*, 153 Idaho 278, 283, 281 P.3d 115, 120 (2012). That said, the use of parenting time evaluations is unique to custody disputes; the authority for and parameters guiding the use of such evaluations are governed by court rule, IRFLP 719. We therefore look to the rule to determine whether the magistrate court abused its discretion—and in particular, whether the court acted consistently with the legal standards applicable to the specific choices available to it.

The rule defines a parenting time evaluation as an objective assessment produced by an expert who is acting to assist the court:

> **A. Definition of Parenting Time Evaluation**. A "parenting time evaluation" is an expert investigation and analysis of the best interest of children with regard to disputed parenting time issues. The parenting time evaluation shall not include interim parenting time recommendations/brief focused assessment. The purpose of a parenting time evaluation is to provide the Court with information it may consider to make decisions regarding custody and parenting time arrangements that are in the child's best interest. This is accomplished, among other things, by assessing the capacity to parent, and the developmental, emotional, and physical needs of the child. Unless otherwise specified in the order, evaluators must consider and respond to the factors set forth at Idaho Code Section 32-717.

> **B. Matters in Which Appointment May be Made**. The court, upon a motion of any party, agreement of the parties or upon its own motion, may order a parenting time evaluation in any action involving custody of minor children to assist the trier of fact with matters that affect the best interest of the child.

> **C. Selection of a Parenting Time Evaluator**. *The court may permit the parties to select an evaluator, or the court may appoint an evaluator*. The evaluator must meet the qualifications set forth in this rule. If the court intends to appoint its own evaluator, it shall follow the show cause procedure set forth in Rule 706, Idaho Rules of Evidence.

> . . . .

> **F. Scope of Evaluation**. All evaluations must be conducted in accordance with the Association of Family and Conciliation Courts (AFCC) Model Standards of Practice for Child Custody Evaluations, American Academy of Matrimonial Lawyers, or the American Psychological Association (APA) Guidelines for Child Custody Evaluations in Family Law Proceedings . . . .

IRFLP 719(A)–(C), (F) (emphasis added).

Whether a party can hire their own expert to conduct a parenting time evaluation is an issue of first impression for this Court. We are thus called upon to interpret Rule 719. Interpreting court rules is somewhat like analyzing statutes. "We begin with an examination of

the literal words of the rule and give the language its plain, obvious and rational meaning." *Miller v. Haller*, 129 Idaho 345, 350, 924 P.2d 607, 612 (1996) (discussing Rule 606(b)). Even so, we recently held that "while the interpretation of a court rule must always begin with the plain, ordinary meaning of the rule's language it may be tempered by the rule's purpose. We will not interpret a rule in a way that would produce an absurd result." *State v. Montgomery*, 163 Idaho 40, 44, 408 P.3d 38, 42 (2017). Thus, where we are called upon to analyze a rule of family law procedure, we will construe the rule in keeping with the purpose of the rule, while mindful of the objective of liberally construing and enforcing the rules "in a manner to secure the just, prompt and inexpensive determination of every action and proceeding." IRFLP 101.

We note three things that guide our analysis of Rule 719. First, the language of the rule is unambiguous. Second, the rule calls for an "expert examination and analysis." Third, parenting time evaluators must adhere strictly to the ethical principles that place such evaluators in a neutral role. We will discuss each principle in turn.

> 1. *The rule unambiguously restricts the court's discretion, allowing the court only two options in these cases.*

Rule 719 allows the court to appoint a parenting evaluator either (1) sua sponte, or (2) upon motion of the parties. That said, the rule does not allow the court to appoint a parenting time evaluator as the expert for one of the parties. The rule clearly states that the court may only appoint a parenting time evaluator when requested by the parties *if the parties together select the evaluator*. IRFLP 719(C). Thus, while the rule allows the court to take that action "on the motion of any party," or "upon its own motion," the relief afforded under such a motion is constrained by the additional requirements of the rule.

> 2. *The rule calls for expert examination and analysis.*

The rule recognizes that a neutral expert examination and analysis can provide a significant benefit to the court in high conflict child custody cases. *Id*. at (A). As we have stated on an earlier occasion, "[a] custody evaluator can be a valuable tool in custody decisions. He or she has the opportunity to spend one-on-one time with the children in the case, observe the children interacting with the parents, and witness first-hand the environments in which the children would be living if in the custody of each parent. . . . This type of in-depth analysis is what makes a parenting time evaluation such a valuable tool." *Firmage v. Snow*, 158 Idaho 343, 348, 347 P.3d 191, 196 (2015).

8

Magistrate courts can be aided immensely by a qualified expert who can take the time to drill-down into both parents' lives and witness first-hand the interpersonal interactions that can influence a judge's understanding of the issues in these emotionally charged cases. But such evaluators must meet the qualifications of the rule, and they must be neutral, in the sense that the parties *jointly* select the evaluator, or the court *appoints* a neutral evaluator, granting them broad authority to perform extensive, even intrusive examinations of the parties' "capacity to parent" and the "developmental, emotional, and physical needs of the child." IRFLP 719(A).

Parenting time evaluators are thus cloaked with broad authority and significant influence founded on the authority of the court. As a result, and as the rule provides, these evaluators are performing a "judicial function," entitling them to quasi-judicial immunity, because of the important, impartial work they perform as an extension of the court. *Id.* at (J) ("Any parenting time evaluator appointed by the court or a court approved, stipulated evaluator is performing a judicial function when conducting an evaluation and is entitled to qualified judicial immunity."). The importance of an evaluator's neutrality cannot be overemphasized. The key to the evaluator's effectiveness is his or her ability to act in the name of the court in performing this important work.

3. *Parenting time evaluators must adhere strictly to the ethical principles that govern their conduct as a neutral.*

The rule also provides that parenting time evaluations are to be conducted in accordance with the ethical parameters of the AFCC Model Standards of Practice for Child Custody Evaluations, American Academy of Matrimonial Lawyers, or the APA Guidelines for Child Custody Evaluations in Family Law Proceedings. IRFLP 719(F). Since there was some debate in this case about whether these ethical standards are mere "guidelines," we take this opportunity to make it clear that the model ethical standards or guidelines governing parenting time evaluators are mandatory in this state and evaluators must comply with these standards scrupulously.

As for potential conflicts and dual role issues, Section 8.1 of the AFCC provides:

Child custody evaluators shall strive for objectivity and shall take reasonable steps to avoid multiple relationships with any and all participants of an evaluation.

The responsible performance of a child custody evaluation requires that evaluators be able to maintain reasonable skepticism, distance, and objectivity. For this reason, evaluators shall take reasonable steps to avoid multiple relationships. Evaluators shall recognize that their objectivity may be impaired

9

when they currently have, have had, or anticipate having a relationship with those being evaluated, with attorneys for the parties or the children, or with the judges. Evaluators shall recognize that relationships cannot be time delimited; specifically, prior relationships or the anticipation of future relationships may have the same deleterious effects upon evaluator objectivity as current relationships would have.

If an evaluator has a "professional or social relationship of any subject of the evaluation" the evaluator must disclose the potential conflict under AFCC section 8.2. Such evaluators are given a wide grant of authority in performing their functions, *e.g.*, complete access to both parties without counsel present. While that access is allowable when such an evaluator acts as an extension of the court, with the imprimatur of the court's neutrality, that unfettered access becomes suspect when the evaluator has been retained by one party for the express purpose of forming an opinion regarding alleged misconduct by the other party. The conflict of interest in such situations is inherent and such a process cannot be sanctioned by Idaho's courts.

Weighing these three legal parameters against the record, we hold that the magistrate court erred and violated the legal standards applicable to the choices before it when it authorized Brandon to retain Dr. McNaught to do a parenting time evaluation as his expert. Based on the scope and purpose of obtaining a parenting time evaluation under IRFLP 719, parenting time evaluators can be selected only by stipulation of the parties or by appointment of the court. In either case, the chosen expert must be neutral, and not beholden to either side. Thus, the magistrate court's allowing Dr. McNaught to act as a "parenting time evaluator" when hired as one party's expert violated the scope and purpose of Rule 719.

We also hold that the court had no basis to grant the wide autonomy permitted under the rule to one party's expert. *See id.* at (E)(2). The context and purpose of Rule 719 is to provide a *neutral* evaluator to assess child custody issues in an unbiased way. Indeed, by providing only two ways for such an evaluator to be chosen, the rule limits the influence one party may have on the evaluator's work. This becomes especially apparent when reviewing the entire rule. As noted above, such evaluations are to be conducted in accordance with model standards of practice and ethical mores that govern such professionals' conduct. *See id.* at (F). Additionally, "[a]ny contacts between the parenting time evaluator and the court shall either be in writing to all parties, conference call with parties and/or their attorneys, or at court hearings with the parties and/or their attorneys. Evaluators may [only] communicate with the court and attorneys separately with respect to scheduling and administrative matters." *Id.* at (H). These parts of the

10

rule underpin the rule's purpose—to insure an evaluator's neutrality, as well as to facilitate the prompt and inexpensive determination of the case. IRFLP 101. Parenting time evaluators must be free of the biases that are part of the relationship when a party hires its own expert.

The facts here establish how the court's appointment of Dr. McNaught violated these legal standards. In November 2017, Brandon's attorney contacted Dr. McNaught and sent her a letter, which contained a $5,000 check, a signed fee/retainer agreement, and a DVD containing "several pieces of documentation and information." Dr. McNaught was asked "to determine whether or not [she] believe[d] that parental alienation is taking place" and to provide a report. Dr. McNaught then had a 20-minute conversation with Brandon's attorney on December 14, 2017, followed by an email the next day in which Dr. McNaught opined Brandi had several severe mental health issues, needed mental health therapy, and that Brandi presented "a risk to [Child] as well as to [Child's] continued relationship with father." Dr. McNaught also expressed her availability to conduct a custody evaluation so that she could "make specific recommendations about a parenting schedule that is in [Child's] best interest."

Three days after receiving Dr. McNaught's email, Brandon moved for a parenting time evaluator, requesting that the court appoint Dr. McNaught as the evaluator. Ultimately, over Brandi's objection, the court allowed Dr. McNaught to perform a parenting time evaluation, not as the court's expert, but as Brandon's expert. In response, Brandi asked to have the court appoint Dr. Robert Engle as a neutral parenting time evaluator, but the court refused, noting that Brandi was "free to hire Dr. Engle as her own expert to conduct a parenting time evaluation." Dr. Engle did conduct forensic testing and interviews, but he refused to conduct a parenting time evaluation without being appointed by the court and having judicial immunity.

Ultimately, the magistrate court accepted evidence that Dr. McNaught had performed her tasks ethically under Rule 719. In doing so the magistrate court likewise erred. Dr. McNaught's initial involvement in this case, her receipt of an initial $5,000 retainer, and her opinions set forth in the December 15 email, show that she had formed an opinion about Brandi's mental issues and risk to the parent-child relationship between Child and Brandon before she began conducting the parenting time evaluation. Once these steps were consummated, there was nothing Dr. McNaught or Brandon's counsel could do to "unring the bell" to transform Dr. McNaught's position into one of objectivity and fairness. Dr. McNaught recognized the nature of the "retention bias" and said she did everything she could to display neutrality thereafter. Even so,

11

there is no way to alter the course of what had already begun – and all of the "i dotting and t crossing" after the fact could not overcome the retention bias that existed from the outset.

While the court's acceptance of Dr. McNaught's opinions was likely based on her acting as an expert witness, rather than a "parenting time evaluator," as provided in Rule 719, Dr. McNaught had been imbued with vast authority and access to Brandi that she otherwise would not have had as Brandon's expert witness. Moreover, Dr. McNaught was ultimately paid over $105,000 to conduct the "parenting time evaluation" *on behalf of Brandon*. Apart from the ethical dilemma presented by this course of events, allowing a party to retain an expert to perform a parenting time evaluation tips the scale in favor of the parent with more resources, with which Brandon had a significant advantage. This also significantly violates the spirit of IRFLP 719, which was crafted to avoid the "battle of experts" formerly associated with too many child custody proceedings in the past.

The bottom line is that a parenting time evaluation must have the sanction of the court—and that evaluator must possess absolute neutrality and not be aligned with either party to the dispute. This holding does not preclude litigants like Brandon from hiring experts under the Idaho Rules of Evidence to present their best view of the circumstances to the court—but such experts cannot be given unfettered access to the other party, including making recommendations to the court regarding psychological treatment requirements for that party. The court erred in allowing Dr. McNaught to cast such a wide net.

The magistrate court thus abused its discretion in permitting Brandon to retain Dr. McNaught to perform a parenting time evaluation as his expert. This error was compounded when the magistrate court relied on Dr. McNaught's recommendations in its custody determination. As we will set forth below, we hold that this error clouded the entirety of the judicial process here and requires that we vacate the judgment regarding child custody and visitation and remand for a new trial regarding this issue.

### B. The magistrate court did not abuse its discretion in allowing Dr. Evans to testify about parental alienation.

Brandon called Robert A. Evans, Ph. D., as an expert witness at trial. Dr. Evans is a psychologist and a registered custody evaluator. Brandi's objection to Dr. Evans' testimony is twofold. First, Brandi asserts that the magistrate court impermissibly allowed Dr. Evans to opine that Dr. McNaught's conduct was proper and she committed no ethical violations because an

expert cannot opine on the credibility of another witness. Given our holding that Dr. McNaught should not have been permitted to conduct a parenting time evaluation, we do not reach the issue of whether the magistrate court abused its discretion in permitting Dr. Evans' testimony regarding Dr. McNaught's report.

Brandi also argues that Dr. Evans should not have been able to testify about "Parental Alienation Syndrome" because it is not recognized in Idaho. Brandi alleges that the magistrate court impermissibly accepted and relied on Dr. Evans' testimony about "Parental Alienation Syndrome" with no "pattern of conduct" that Brandi intended to, or caused, any relationship problems between Child and Brandon. While we have vacated the child custody and visitation judgment for reasons set forth previously in this opinion, we will address this question for guidance on remand of this case.

Brandi alleges that Dr. McNaught, along with Dr. Evans, were hired to mount a campaign to prove Parental Alienation Syndrome or the equivalent, the common remedy of which is a transfer of custody to the alienated parent. While Brandi insists that the magistrate court impermissibly made a finding of "Parental Alienation Syndrome," this argument is unsupported by the record. The magistrate court relied on Dr. Evans' testimony concerning 17 different alienating strategies used by parents, but it never specifically made a finding regarding the existence of Parental Alienation Syndrome.

This Court has recognized that "the acts and conduct of the custodial parent, resulting in the alienation of the love and affection which children naturally have for the other parent, is a vital and very serious detriment to the welfare of such children and is grounds for modification of the decree with respect to such custody." *Woods v. Woods,* 163 Idaho 904, 908, 422 P.3d 1110, 1114 (2018) (quoting *McGriff v. McGriff*, 140 Idaho 642, 652, 99 P.3d 111, 121 (2004)). In *Doe v. Doe*, the Court explained that alienation requires "a pattern of conduct designed to drive a wedge between the children and the other spouse." 161 Idaho 67, 76, 383 P.3d 1237, 1246 (2016). In *Doe*, the Court found that the mother had not engaged in a pattern of alienating behavior. The Court emphasized that, apart from one text message, there was no evidence that the mother said anything negative to the children about their father. *Id*. Further, while the mother did not encourage the children to go on visitation with father, the Court found "scant evidence in the record that she actively inhibited or undermined father's visitation rights." *Id*. at 78, 383 P.3d at 1248.

13

Unlike the mother in *Doe*, here the magistrate court found a pattern of Brandi "bad-mouthing" Brandon in Child's presence and limiting Brandon's contact with Child. The evidence supports the magistrate court's conclusion. For example, Brandi admitted that she called Brandon "crazy" and "insane" while Child was in Brandi's arms. Brandon testified Brandi had called him a "psychopath" in front of Child on one occasion, and a "dickhead" on another. During a doctor's office visit Brandi called Brandon a "psycho" while holding Child. Brandi made comments that Child should feel uncomfortable around Brandon, including one instance when Brandon went to pick up Child and Brandi said "it will be okay" and "don't cry" even though the Child appeared happy to go with Brandon. Brandi also made negative comments about Brandon's brother in front of Child when she was picking him up stating "We can't tell who is fatter today, Megan or Liam?" Liam is Brandon's brother and Megan is Liam's girlfriend.

The magistrate court also found that Brandi had a pattern of limiting Brandon's contact with Child. Brandi refused to allow Brandon to see Child on Child's birthday but the parties agreed Brandon would see Child the next day. Even so, when Brandon showed up the next day Brandi refused to let him see Child. At one point the court found Brandi in contempt for failing to allow Brandon to exercise his court-ordered visitation. Brandi also withheld Child's medical information and refused to tell Brandon about some of Child's doctor appointments.

The magistrate court determined Brandi's "actions were a direct or indirect attempt to alienate [Child] from Brandon which is not in [Child's] best interest." The magistrate court continued that

> even in the absence of a specific finding regarding the term, 'parental alienation' per se, Brandi's actions as detailed in the [c]ourt's findings and in Dr. McNaught's reports raise serious concerns about the welfare and best interests of [Child] in Brandi's care and co-parenting until she has addressed her behavioral and mental health issues.

The magistrate court did not abuse its discretion in permitting Dr. Evans to testify about alienating strategies used by parents. The magistrate court relied on this information only to determine whether there was a "pattern of conduct" designed to drive a wedge between the child and the parent. There is substantial evidence in the record to support the magistrate court's finding that Brandi engaged in a pattern of bad mouthing Brandon in front of Child and limiting Brandon's contact with Child. Thus, there was no error on this sub-issue.

**C.      Brandi is precluded from arguing that the magistrate court abused its discretion in permitting Dr. Woodruff's report.**

Brandon disclosed Dr. Woodruff, a child neurologist, as an expert witness who would testify that

> [Child] does not require one-on-one care outside of that typically provided for any child his age; that he expects [Child] to be able to participate in a day care school setting without individualized assistance; and that [Child] is expected to be educated in a mainstream school setting.

Before trial Brandi agreed that Dr. Woodruff's report would be admitted, or his video deposition could be taken, rather than fly him to Idaho Falls for trial. But on the first day of the first trial—which considered all issues *except* custody, visitation, and child support—Brandi's counsel objected to the admission of Dr. Woodruff's report, citing that the parties had agreed on the admission of the report before the bifurcated trial. Brandi's counsel's concerns stemmed from their ability to present a rebuttal to Dr. Woodruff's report without getting into the custody issues that were set to occur at the second trial in September. The magistrate court did not find Brandi's counsel's concerns persuasive, particularly given that he knew Dr. Woodruff's report was coming and Brandi suggested she had a witness to counter the opinions in the report, but did not have that rebuttal ready. The court did not find the bifurcation to have changed Brandi's ability to present a defense and admitted Dr. Woodruff's report. On appeal Brandi argues that there was no more than "an agreement to agree," which is not binding on the parties. Even so, Brandi's opposition to Dr. Woodruff's report stems from the magistrate court's admission of it at the first trial over spousal support, which is not an issue before the Court on this appeal. When Dr. Woodruff's report was discussed on the first day of the custody trial, Brandi's counsel did not object. "A party's failure to object to action by the trial court precludes a party from challenging that action on appeal." *Woods v. Sanders*, 150 Idaho 53, 57, 244 P.3d 197, 201 (2010) (quoting *Mackowiak v. Harris*, 146 Idaho 864, 866, 204 P.3d 504, 506 (2009)). Moreover, Brandi's objection was about her ability to present a rebuttal witness, which she had ample time to prepare before the custody trial. Thus, we will not consider Brandi's argument on appeal.

**D.      While there is some evidence in the record to support the magistrate court's custody decision, that evidence is so tainted by the court's reliance on Dr. McNaught's testimony it is unreliable.**

The crux of Brandi's argument on appeal is that the magistrate court impermissibly gave the testimony of Brandon's experts more weight than her own experts at trial. As we have held,

the magistrate court abused its discretion by admitting Dr. McNaught's testimony. Brandon argues that we may, even excluding that evidence and testimony, find that substantial evidence in the record supports the magistrate court's decision to award sole legal custody and primary physical custody of Child to Brandon.

This Court reviews child custody determinations under an abuse of discretion standard. *Clair v. Clair*, 153 Idaho 278, 282, 281 P.3d 115, 119 (2012) (citing *Schneider v. Schneider*, 151 Idaho 415, 420, 258 P.3d 350, 355 (2011)). An abuse of discretion occurs when the evidence cannot support a magistrate's conclusion that the interests and welfare of the children would be best served by the magistrate court's order. *Id.* "Substantial evidence is more than a scintilla of proof, but less than a preponderance. It is relevant evidence that a reasonable mind might accept to support a conclusion*." Ehrlich v. DelRay Maughan, M.D., P.L.L.C.*, 165 Idaho 80, ___, 438 P.3d 777, 780 (2019) (citation omitted). Substantial evidence does not require that the evidence be uncontradicted. *SilverWing at Sandpoint, LLC v. Bonner Cnty.*, 164 Idaho 786, ___, 435 P.3d 1106, 1114 (2019) (citation omitted). Rather, the evidence need only be of sufficient quantity and probative value that reasonable minds could conclude that the fact finder's conclusion was proper. *Id*.

We conclude that while there is some evidence in the record other than Dr. McNaught's testimony to support the magistrate court's custody determinations, much of that evidence is so tainted by the pervasiveness of Dr. McNaught's testimony and recommendations that it cannot be said to be substantial or competent. The magistrate court's judgment must therefore be vacated.

The magistrate court considered the relevant factors in Idaho Code section 32-717 and in its discretion awarded the parties joint physical custody, with Brandon receiving primary physical custody subject to Brandi's visitation. The court also awarded Brandon sole legal custody. As a basis for this conclusion the magistrate court explained:

> Brandi cannot be trusted to be honest with [Child's] medical providers. Brandi has not shown that she can communicate appropriately with Brandon or behave positively during exchanges or effectively co-parent over a consistent period of time. Brandi has unresolved psychological issues for which she needs professional, consistent treatment. In contrast, Brandon's primary focus is [Child's] best interests. The Court concludes that there are strong reasons for overcoming the presumption in favor of joint legal custody at this time. For the same reasons, the Court declines to enter a care-giver of first choice clause.

16

This conclusion was advocated by Dr. McNaught, who recommended in her report:

That Brandi immediately be evaluated by a Board-Certified psychiatrist. This psychiatrist should be given my report prior to meeting with Brandi. It will be important for Brandi to remain compliant with recommended medications as long as her Psychiatrist recommends she do so. It is also imperative that Brandi meet on a weekly basis with preferably a psychologist trained in the treatment of trauma. If a psychologist is not available, a licensed social worker trained in the treatment of trauma is recommended.

. . . .

Assuming that [Brandi] immediately initiates the following [sic] treatment recommendations, it is recommended that the parties share physical custody. If she is unwilling to do so, it is recommended that [Child] be placed in the sole physical custody of his father until mother complies with the treatment recommendations. Sole legal custody should be awarded to father until such time as mother demonstrates improvement in her condition and a continued willingness to follow the recommendations of the treating professionals.

While Brandon did advocate for sole legal custody in his proposed findings of fact and conclusions of law submitted to the court, he conveyed that he did so "in concert with Dr. McNaught's recommendation for the same." Thus, while there may be evidence in the record which would support the magistrate court's conclusion, we have little doubt that Dr. McNaught's report and testimony factored into that determination in a significant way. Since we cannot parse-out the facts supporting the magistrate court's legal conclusion separate from Dr. McNaught's testimony, we are compelled to vacate the judgment and remand the case for a new trial wholly independent of the offending expert testimony that we have noted in this opinion.

E.    **The magistrate court abused its discretion in ordering Brandi to undergo psychological evaluation and counseling as recommended by Dr. McNaught.**

Brandi argues the magistrate court erred by following Dr. McNaught's recommendations that she submit to additional psychological testing and weekly counseling sessions. The magistrate court ordered:

Brandi shall immediately be evaluated by a Board-Certified psychiatrist. This psychiatrist shall be given Dr. McNaught's written custody evaluations prior to meeting with Brandi. Brandi shall remain compliant with recommended medications as long as her psychiatrist recommends that she do so.

Brandi shall meet on a weekly basis with preferably a psychologist trained in the treatment of trauma, Major Depression, and anxiety. If such a psychologist is not available, Brandi shall meet with a licensed social worker trained in the

17

treatment of trauma, Major Depression, and anxiety. This provider shall be given Dr. McNaught's written custody evaluations prior to meeting with Brandi.

Since we have vacated the judgment, we likewise vacate the requirement that Brandi undergo psychological evaluation and counseling as recommended by Dr. McNaught. We take this opportunity to clarify that a judge has no authority to order medical/psychological treatment in a custody case *unless* there is direct testimony that such treatment would be in the *best interest* of the child. If the record supports such a conclusion, the trial court may appropriately order such treatment as a condition of visitation. Beyond that limitation, the trial court has no authority to make such carte blanche orders. The language cited from the order here is deficient because (1) it is not a condition of visitation and (2) it is not specifically tied to the best interest of Child.

**F.      The magistrate court did not abuse its discretion in its discovery determinations.**

Although we have vacated the judgment, we address additional issues raised on appeal for guiding the court and the parties on remand.

Brandi also claims the magistrate court did not allow reasonable discovery. The control of discovery is an area within the discretion of the trial court. *Vaught v. Dairyland Ins. Co.*, 131 Idaho 357, 360, 956 P.2d 674, 677 (1998). IRFLP 402 provides:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

IRFLP 402(B)(1).

Brandi claims that the magistrate court erred when it quashed her proposed subpoenas and only allowed the discovery Brandon was willing to provide. Before trial Brandi tried to subpoena documents pertaining to Brandon's work history, including: hours worked, complaints, and disciplinary actions. The portions of the record Brandi cites are subpoenas to Eastern Idaho Health Services, Mountain View Hospital, and Idaho Neurosurgery and Spine, PLLC. Brandon objected. A hearing took place, and the magistrate court limited Brandi's subpoenas to Brandon's on call and work schedule, but excluded the rest of the information she sought after finding it to be "overly broad, not specific, not relating to a designated incident or particular set

of circumstances." Brandi later executed subpoenas that were limited to information on Brandon's work hours. While Brandi cites the appropriate legal standards for discovery disputes, Brandi gives no argument on how the magistrate court abused its discretion; instead, Brandi reiterates in conclusory fashion that the magistrate court erred. "Failing to demonstrate that an abuse of discretion occurred under any part of the test applied by this Court . . . is fatal to [an] argument that the court abused its discretion." *Matter of Doe I*, 165 Idaho 33, ___, 437 P.3d 33, 44 (2019).

Brandi also claims that the magistrate court erred by directing Brandon's counsel to subpoena documents from Bingham Memorial Hospital and Skyline Surgical Center. But there is no evidence in the record that Brandi ever tried to subpoena either of these entities. As noted, "[t]he control of discovery is an area within the discretion of the trial court." *Vaught*, 131 Idaho at 360, 956 P.2d at 677. Brandi has failed to show how the magistrate court abused its discretion by permitting Brandon's counsel to subpoena information to refute Brandi's allegations that Bingham Memorial Hospital and Skyline Surgical Center had revoked Brandon's medical privileges. Brandon did not receive the subpoenaed documents until after trial concluded and he then moved to reopen the record. Over Brandi's objection, the magistrate court allowed Brandon to submit those documents so that the judge could determine facial reliability. On appeal Brandi argues that admission of the letters violates hearsay and foundational rules of evidence. Other than Brandi's claims that she should have had a right to get the hospital records herself, Brandi has failed to show how the magistrate court abused its discretion.

Lastly, Brandi argues the magistrate court abused its discretion by denying her request for Brandon's cell phone records to support her argument that Brandon was constantly on the phone. Brandi cannot provide any citation to the record where the magistrate court ruled on this issue and so we will not consider it on appeal. "This Court will not search the record on appeal for error." *Liponis v. Bach*, 149 Idaho 372, 375, 234 P.3d 696, 699 (2010).

### G. The magistrate court did not abuse its discretion by requiring Child to reside in Bonneville County.

Brandi argues the magistrate court acted arbitrarily and without reason by requiring her to reside in Bonneville County if she wanted to maintain custody of Child. In a divorce action where custody is at issue, a court lacks the authority to order where the parents must live. *Allbright v. Allbright*, 147 Idaho 752, 754, 215 P.3d 472, 474 (2009). Even so, in *Clair v. Clair,*

this Court recognized that "[a]lthough *Allbright* does include explicit language that states I.C. § 32–717(1) 'does not authorize a court to decide the geographic area in which the parent or parents of the child shall live,' it does not supersede the magistrate court's discretion in the best interest of the child to "'determine with which parent the child will reside.'" 153 Idaho 278, 285, 281 P.3d 115, 122 (2012) (quoting *Allbright,* 147 Idaho at 754–55, 215 P.3d at 474–75).

Here, the magistrate court determined that it was in Child's best interest to remain near Idaho Falls and ordered that "[C]hild's future residence with his Mother shall be in Bonneville County (though she alone is not so restricted)." A court cannot order where a parent shall live. *Allbright*, 147 Idaho at 754, 215 P.3d at 474; *Clair*, 153 Idaho at 285, 281 P.3d at 122. That said, the court may conclude it is in the best interest of the child that the child remains in a particular place. That is what the magistrate court found here. After recognizing that the only two homes Child has ever known are in Idaho Falls, the magistrate court ordered that Child's future residence would need to continue to be in Bonneville County. This tracks Brandi's own testimony that she would continue to reside in Idaho Falls. The magistrate court did not abuse its discretion in ordering Child to remain in Bonneville County.

**H.     No Attorney Fees on appeal.**

Both parties have requested attorney fees on appeal under Idaho Code section 12-121. Attorney fees under this statute may be awarded to the prevailing party when an appeal is brought frivolously, unreasonably, or without foundation. I.C. § 12-121. Because both parties have raised important issues of first impression and prevailed in part, we decline to award attorney fees on appeal to either side.

## VI. CONCLUSION

We vacate the magistrate court's award of sole legal custody and primary physical custody to Brandon. The case is remanded for a new trial. If the trial court grants Brandi's pending IRFLP 107 motion, the newly assigned magistrate court judge should preside over all proceedings on remand, including those portions that are presently on appeal before the district court, once that appeal process is final. No attorney fees or costs are awarded.

Chief Justice BURDICK, Justices BRODY, STEGNER and MOELLER, CONCUR.